# LOUISVILLE AND NASHVILLE RAILROAD COMPANY v. WEST COAST NAVAL STORES COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 225.   Submitted April 25, 1905.—Decided May 29, 1905.

A common carrier may agree with such other carrier as it may choose to forward beyond its own line goods it has transported to its terminus; and, if it has adequate terminal facilities at a sea port, sufficient for all freight destined for that place, it is not obliged to allow other and competing carriers to load and discharge at a wharf owned by it and erected for facilitating the transportation of through freight to points beyond that place.

The fact that a wharf is built by a railroad company on what might be the extension of a public street, under permissions of the municipality, does not, in the absence of express stipulations, make it a public wharf, or affect the company's right of sole occupancy, or power of regulation, thereof.

CERTIORARI to the Circuit Court of Appeals for the Fifth Circuit to review a judgment of that court affirming one in favor of the West Coast Naval Stores Company (hereinafter called the plaintiff), against the Railroad Company (hereinafter called the defendant), for damages for refusing to permit the plaintiff to use the wharf of defendant at Pensacola for the

transportation of plaintiff's property, as stated in the declaration.

The action was brought in the Circuit Court of the United States for the Northern District of Florida.

The plaintiff's declaration contains two counts, which are substantially the same, and it is therein averred that the plaintiff is a citizen of Florida and the defendant is a citizen of Kentucky, and that the latter is a common carrier, and carries goods into Pensacola over its railroad, and among them the goods of the plaintiff. The course of business between the two companies has been for the plaintiff to obtain transportation of its turpentine and rosin from its yard near Pensacola, and its warehouse in that city, by means of a switch, built for that purpose by the defendant, to defendant's main line, and thence to the wharf of defendant (which plaintiff alleged was a public wharf), by means of the cars and upon the railroad of the defendant. The wharf extended into the bay of Pensacola, and was used by defendant (and by persons bringing goods over the defendant's railway to and into Pensacola) for the purpose of shipping such goods from the wharf to vessels destined for other ports. After defendant had transported the goods of the plaintiff to the wharf of defendant, the plaintiff had been accustomed to ship to other ports by vessels, with the managers of which plaintiff had contracts of carriage; that in the midst of the prosecution of such business defendant had notified plaintiff that it would thereafter refuse, and it did thereafter refuse, to allow plaintiff to transport its goods to the wharf for the purpose of there loading them on such vessels as above mentioned, and refused to permit the wharf and railway of defendant to be used in the prosecution of plaintiff's business, in so far as the prosecution would involve the use of the vessels chosen by the plaintiff for the shipment of the goods from Pensacola, to the damage of the plaintiff, as set forth in the declaration.

The defendant filed several pleas to this declaration and the plaintiff demurred to them, which demurrer was overruled

by the Circuit Court.. Upon writ of error the Circuit Court of Appeals reversed that judgment. 121 Fed. Rep. 645, and when the case came down the defendant withdrew all former pleas and filed in the Circuit Court another plea, as follows:

"The defendant, withdrawing all former pleas, pleads to the first and second counts of the declaration as follows:

"1. That the defendant has adequate depots and yards in the city of Pensacola for the receipt and delivery of all merchandise committed to it for transportation to, and delivery at, Pensacola. That neither its charter nor any statutory law has compelled or required, or compels or requires it to construct or maintain the wharf mentioned in the declaration, but that it constructed the same at an expense to it of tens of thousands of dollars, for the purpose of providing facilities for the transaction of its business with such vessels as it might permit to come to and lie at said wharf to take cargo. That no business has ever been done at said wharf except the transportation by the defendant in cars on its railroad over said wharf to and from vessels lying at the said wharf, of goods brought, or to be transported, by said vessels and the loading and unloading thereat of such vessels. That in accordance with such purpose it made and promulgated, upon the construction of said wharf, and more than five years prior to the bringing of this suit, rules and regulations, by which it limited the use of its wharves, including the wharf mentioned in the declaration, 'to traffic handled by vessels in regular lines running in connection with the Louisville and Nashville Railroad, and vessels belonging to, or consigned to, Gulf Transit Company' (an agency of defendant), and making the use of said wharves 'for traffic in connection with vessels other than herein referred to,' 'subject to special arrangement.' The said rules and regulations were in operation and enforced by defendant from the time of their promulgation, as aforesaid, up to, and at the time of, the refusal of the defendant to permit the naval stores of the plaintiff to be loaded from its wharf

into the 'certain vessels' mentioned in the declaration, and still are in force and operation. That the said 'certain vessels' were not regular lines running in connection with the Louisville and Nashville Railroad, nor were they belonging to, or consigned to, Gulf Transit Company, nor had they made any special arrangements with the defendant for the use of the said wharf, but that said vessels constituted an independent line between New York and Pensacola, and New York, and Mobile, Alabama, carrying merchandise between the said points, and would have come in competition with a line of steamers with which the defendant was then negotiating for regular service in the transportation of merchandise to and from New York and Pensacola in connection, and under traffic arrangements, with defendant, and such service has since been established, and a line of steamers is now regularly transporting merchandise between said points in such connection, and under such traffic arrangements; and was also in competition with the defendant itself, which was, at said time, and had been for a long time prior thereto, engaged in a like business between said points, carrying goods by its line of railroad from Pensacola and Mobile to River Junction, Florida, Cincinnati, Ohio, and Montgomery, Alabama, and there delivering the same to a connecting carrier and other carriers connecting therewith, transporting goods to the city of New York, and receiving from said connecting carriers at the points aforesaid, and transporting to Pensacola and Mobile, goods shipped from New York to Pensacola and Mobile.

"That the defendant has not either notified plaintiff that it would not carry plaintiff's naval stores nor refused to transport plaintiff's naval stores over its railway mentioned in the declaration, to and on its wharf also mentioned in the declaration; that it has at all times so transported them when requested so to do by the plaintiff; that the defendant has refused to permit the certain vessels mentioned in the declaration to take goods and merchandise from its said wharf to be transported by them to the port of New York, as aforesaid, but that such

refusal was solely because the said vessels were not of either of the classes provided for by the rules aforesaid, nor had made special arrangements with the defendant, and would have been, as aforesaid, in competition with the lines of vessels connecting with the defendant, running to and from New York, and was, as aforesaid, in competition with the defendant itself in its rail transportation aforesaid to and from New York city; and that the defendant was then, and at all times had been, ready and willing to give, and did give, to the plaintiff the same facilities for shipping naval stores to New York, or any other port, over defendant's said wharf, as it gave to any and all other shippers; that the unloading by the plaintiff of its said goods into said vessels necessarily involves the lying at, attachment to and use of the said wharf, one of the terminals of the defendant, by the said vessels; that the said wharf was not at the time mentioned in the declaration, and has never been, a public wharf, unless the facts set forth hereinbefore in this plea constituted it such."

This plea was in substance the same as the third plea, which defendant had theretofore interposed and which the Circuit Court of Appeals had held bad. The plaintiff again demurred. The Circuit Court sustained the demurrer, in accordance with the decision of the Circuit Court of Appeals, and gave leave to the defendant to amend as it might be advised. The defendant refused to amend. Judgment was then entered against it by default and direction given to proceed with the case for the purpose of having plaintiff's damages assessed. A trial by jury upon the question of damages was had, and the jury found a verdict for the plaintiff for one thousand dollars, upon which judgment was duly entered.

The defendant then sued out a writ of error to the Circuit Court of Appeals for the Fifth Circuit, which court, adhering to the views expressed by it on the former appeal, affirmed the judgment, 128 Fed. Rep. 1020, and the defendant thereupon applied to this court for a writ of certiorari, which was granted, and the case is now here.

*Mr. W. A. Blount* and *Mr. A. C. Blount, Jr.,* for plaintiff in error:

Plaintiff in error affirms and defendant in error denies that a railroad company which has provided ample facilities for the delivery by it of all freight committed to it for transportation to, and delivery at, a city on the seaboard, can, when not compelled by statute or charter, construct a wharf, place tracks thereon, connect them with its tracks leading thereto, and transport freight over such track for all persons alike and have the right to permit to come to such wharf, for the purpose of removing such freight, only such vessels as may run in regular lines in connection with it, or such as may come under special arrangements with it, and to refuse such wharf facilities to vessels which would come in competition with it, or with lines of steamers running in connection with it.

The railway company is not under the circumstances of this case a common carrier as to its wharf.

A railroad company may restrict itself to carrying passengers, as in the case of inter-urban trolley lines; it may decline to carry dogs, *Dickson* v. *Gt. Nor. Ry.*, L. R. 18 Q. B. 176; or coals, *Oxlade* v. *N. E. R. R. Co. (No. 2)*, 1 Nev. & Mac. 162; *S. C.,* 15 C. B., N. S. 680; *Johnson* v. *Midland Ry. Co.*, 4 Exc. (W., H. & G.) 367; or money, *Hosea* v. *McCrory*, 12 Alabama, 349; *Whitemore* v. *Caroline*, 20 Missouri, 513; or cattle, *Lake Shore &c.* v. *Perkins*, 25 Michigan, 329.

Or any other article of transportation which may be sufficiently differentiated from articles actually carried by it as to be reasonably put into a distinct class. It may devote portions of its facilities to its own use, or to the use of particular individuals, and thus refuse to be a common carrier as to those facilities. The mere fact that they belong to it or are used by it in connection with transportation does not subject them to the common use of the public. *People* v. *Spruance*, 67 Illinois, 437; *Citizens' Bank* v. *Nantucket Steamboat Co.*, 2 Story, 33; *Garton* v. *Railway Co.*, 1 Best & Sm. 112, 162; Hutchinson on Carriers, 75.

One common carrier has not, independent of charter or contract, the right to use the terminals of another carrier. *Atchison, T. & S. F. R. R. Co.* v. *Denver & New Orleans Ry. Co.*, 110 U. S. 667; *Gulf, C. & S. F. Ry.* v. *Miami S. S. Co.*, 86 Fed. Rep. 407, 416; *Little Rock &c. R. R. Co.* v. *St. Louis & Lev. Ry. Co.*, 63 Fed. Rep. 775; *Little Rock &c. R. R. Co.* v. *St. Louis, I. M. & S. Ry. Co.*, 59 Fed. Rep. 404; *St. Louis Drayage Co.* v. *L. & N. R. R. Co.*, 65 Fed. Rep. 39; *Kentucky & I. B. Co.* v. *L. & N. R. R. Co.*, 37 Fed. Rep. 567, 628; *Ore. Short Line &c.* v. *Nor. Pac. R. R. Co.*, 51 Fed. Rep. 465, 475; *Ilwaco Ry. & Nav. Co.* v. *Ore. Short Line &c.*, 57 Fed. Rep. 673. The law is the same in England. See *Napier* v. *Glasgow and S. W. Ry. Co.*, 1 Nev. & Mac. 292.

The principles of this case are covered by the decisions which treat of the right of a railway company to discriminate between draymen, hackmen., etc., desiring to use the depot and like facilities of the railroad. While such decisions are in conflict, the vast weight of them is in favor of the right of the carrier to select from the persons desiring such facilities, one or more with whom it can make agreements agreeable to it, and refuse to permit the others the use of such facilities. Among the numerous cases upholding this contention in both state and Federal courts see *Jencks* v. *Coleman*, 2 Sumner, 221; *Barker* v. *Midland Ry. Co.*, 18 C. B. 46; *S. C.*, 86 E. C. L. R. 45; *Beadell* v. *Eastern Counties Ry. Co.*, 2 C. B. (N. S.) 509; *S. C.*, 89 E. C. L. R. 509; *Painter* v. *London &c. Ry. Co.*, 2 C. B. (N. S.) 702; *S. C.*, 89 E. C. L. R. 701; *Barney* v. *Oyster Bay Steamboat Co.*, 67 N. Y. 301; *Barney* v. *D. R. Martin*, 11 Blatch. 534; *Old Colony R. Co.* v. *Tripp*, 147 Massachusetts, 35; *Commonwealth* v. *Carey*, 147 Massachusetts, 40; *Fluker* v. *Georgia Ry. Co.*, 81 Georgia, 461; *Griswold* v. *Webb*, 16 R. I. 649; *Smith* v. *N. Y., L. E. & W. R. Co.*, 149 Pa. St. 249; *N. Y. Cent. R. Co.* v. *Flinn*, 74 Hun, 124; *N. Y. Cent. Ry. Co.* v. *Sheeley*, 27 N. Y. Supp. 185; *Brown* v. *N. Y. Cent. Ry. Co.*, 75 Hun, 355; *Summit* v. *State*, 76 Tennessee, 413; *Lucas* v. *Herbert*, 148 Indiana, 64; *N. Y. R. R. Co.* v. *Scoville,*

71 Connecticut, 136; Kates v. Cab Co., 107 Georgia, 636; Godbout v. St. Paul Union Depot, 79 Minnesota, 188; N. Y. Cent. R. Co. v. Warren, 64 N. Y. Supp. 781; Boston & Albany R. Co. v. Brown, 177 Massachusetts, 65; Boston & Maine R. Co. v. Sullivan, 177 Massachusetts, 230; N. Y. &c. R. Co. v. Bork, 23 R. I. 49.

There is no charge in the declaration that the railway company discriminated against the plaintiff or the public.

Plaintiff has no cause of action unless it be law that it can sue for the deprivation of an alleged right of the vessels by which deprivation it has not been in the slightest injured.

It is especially true that one competing common carrier has not, independent of statute or contract, the right to use the terminals of another carrier.

The right of a railroad company to discriminate to the extent of protecting itself is fully recognized by this court. See Tex. & Pac. Ry. Co. v. Interstate Com. Com., 162 U. S. 197.

It is also especially true that one common carrier has not, independent of statute or contract, the right to use the wharf of another carrier.

A railroad company performs its whole duty to the public at large and to each individual when it affords the public all reasonable accommodations. If this is done the railroad company owes no duty to the public as to the particular agencies it shall select for that purpose. Express Cases, 117 U. S. 1, 24; C., St. L. & N. O. Ry. Co. v. Pullman Co., 139 U. S 79; St. Louis Drayage Co. v. L. & N. R. R. Co., 65 Fed. Rep. 39.

Even if the wharf had been a public one the railroad company had a right to discontinue its public use at any time and refuse to let any particular individual use it. O'Neil v. Annett, 27 N. J. Law, 290; Heany v. Heeny, 2 Den. 625; Bogart v. Haight, 20 Barb. 251; The Mary K. Campbell, 31 Fed. Rep. 840; Steamboat Co. v. Transportation Co., 28 Florida, 433, distinguished.

*Mr. John C. Avery* for respondent:

The wharf is either a public wharf or it is so located and used that the public have a right to have goods intended for shipment by water beyond Pensacola carried thereto and have ships moored thereat and take on the goods.

The gravamen of the case is not that the railway company would transport the goods on its lines but that it would not permit the goods to be at, from or by means of, the wharf loaded on vessels other than those of the railway company. The case is not covered by § 3 of the interstate commerce act. What is involved here is terminal facilities, not within the interstate commerce act, but merely a public toll or charge not only reasonable, but necessary. This must be enforced by, and subject to, some law, and, in the absence of congressional legislation, there is no law except that of the State. The application of state law in such cases is not inconsistent with the general power conferred upon Congress, and does not introduce into commerce either confusion or restraint.

As the case is not within the operation of the interstate commerce act, the common law must govern in determining the rights of the parties. Under this the right of plaintiff is clear. As to whether there is a national common law applicable in the Federal courts see *W. U. Tel. Co.* v. *Call Pub. Co.,* 181 U. S. 101. And see *Steamboat Co.* v. *Transportation Co.,* 28 Florida, 433; *Ore. Short Line* v. *I. R. M. Co.,* 51 Fed. Rep. 611; but see *I. R. M. Co.* v. *Ore. Short Line,* 57 Fed. Rep. 673.

The wharf was operated by the railroad company, not as a private wharf, but for use not only by the boats operated by it and the Gulf Transit Company, but also by all persons with whom the railroad company should see fit to make "special arrangements." That is, it appears that the wharf was not a private but a public wharf; it was used, not only in the private business of the railroad company, but as a facility in the navigable waters of the Bay of Pensacola, in aid of commerce engaged in by the Louisville & Nashville Railroad

Company and by the Gulf Transit Company, and by all the rest of the public.

It is perfectly obvious that the course of the company was to give to a very large portion of the public the right to use its wharf, with the result that such wharf became a facility in which the public, as a public, had become interested in such manner and to such extent as to deprive the defendant of the right to claim that it was a private wharf, in the operation of which the public were not entitled to insist that equal privileges were to be accorded to all persons requiring them in their respective businesses. *Munn* v. *Illinois*, 94 U. S. 125. See Hale's De Portibus Maris, under "Ferries;" *Dutton* v. *Strong*, 1 Black, 33; Gould on Waters, 231; 1 Dillon Mun. Corp. § 68; *Compton* v. *Hawkins*, 8 So. Rep. 75; *Barrington* v. *Commercial Dock Co.*, 45 Pac. Rep. 748; *The Express Co. Cases* can be distinguished.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

When this case was first before the Circuit Court of Appeals it was stated in the opinion which was then delivered that the case showed that the railroad company was in possession of a large wharf, built at its own expense, "on the extension of a public street in the city of Pensacola into the deep waters of the harbor of the city." On looking at the record before us we find in the pleadings no averment that the wharf in question was in fact built as such an extension. The statement of facts preceding the opinion of the Circuit Court of Appeals shows, however, that there were replications filed to the various pleas, one of which replications contained the averment that the wharf was an extension of a street of the city of Pensacola into the bay of Pensacola for a distance of more than five hundred yards, all within the limits of the city of Pensacola, and maintained by the defendant by authority of the city. Hence the statement in the opinion was perfectly

correct.  Subsequently to the decision of the Circuit Court of Appeals, and after the case was remanded to the Circuit Court, it appears by the record before us that the defendant withdrew all its former pleas and filed the single plea set forth in the foregoing statement of facts.  To this plea no replication was filed.  Counsel for the plaintiff admits that neither the declaration nor the plea contains any averment that the wharf in question was an extension of a public street.  If we assume, what is without doubt the fact, that the wharf was built at the foot of a public street in the city of Pensacola and was carried out into the deep water of the bay some hundreds of yards, we must also assume the fact mentioned in the brief of the defendant, and substantially set forth in the former replication, that the building and maintaining of the wharf were authorized by authority from the city of Pensacola and also from the State of Florida.  These facts will therefore be taken as admitted, in order that the case may be discussed upon the facts as they really exist.

Counsel for plaintiff now asserts, and we assume, that the gravamen of plaintiff's complaint is, not that the defendant would not transport plaintiff's goods, or any part of them, on defendant's lines, from the wharf in question, "but only that defendant would not permit plaintiff's goods to be at, from or by means of defendant's wharf loaded upon, or delivered to, the said vessels," with the managers of which plaintiff had contracted to have its goods transported to other ports.  This means of transportation, by such vessels as plaintiff should choose, is asserted by it as a right, because it contends that the wharf of defendant, under the averment to that effect in the declaration and not denied, in terms, in the plea, taken in connection with the facts stated in such plea, was a public wharf, or that, at least, the defendant had devoted it to a public use.  The defendant in its plea sets up facts which it avers show that the wharf was not a public one.  The plaintiff insists that the plea shows that the defendant built and used the wharf itself and permitted a large part of the public to

use it, including, at any rate, those who were engaged in traffic handled by vessels belonging to regular lines running in connection with the defendant, and also including vessels belonging or consigned to the Gulf Transit Company, an agent of defendant, together with those who were using the wharf under some special arrangements, between them and the defendant. All this, the plaintiff contends, amounted to making the wharf a public one, or at least that it thereby became a facility, to the use of which the public as a public had a right on payment of reasonable compensation. If plaintiff chose to employ, for the further transportation of its goods, the vessels with the managers of which the defendant had some business arrangement or contract, it is not denied that the defendant would and did permit such transportation. In this respect there is no allegation that the plaintiff did not have equal facilities with all other shippers. Defendant's plea avers that it did give to plaintiff the same facilities for shipping its goods over defendant's wharf that it gave to any, or all shippers. In brief, the fact seems to be that the only complaint of the plaintiff is that defendant will not permit competing vessels to make use of its wharf 'for the purpose of such competition.

We do not see that the fact that the wharf was erected under authority from the city, at the foot of a public street of the city, makes any material difference in the character of the wharf or that the right of plaintiff to select its own vessels to continue from that wharf the transportation of its goods is on that ground enhanced, or the right of defendant to control the wharf for its own use when erected is thereby diminished. The right to erect the wharf was granted by the proper authorities, and so far as the record shows, it was granted without imposing any conditions as to its use by the public. We think the plaintiff had no right of access to the wharf founded simply upon the fact that it was erected under proper authority, in the harbor of Pensacola and at the foot of one of the public streets of that city. The question of the rights of plaintiff must really

turn upon the character of the use of the wharf, whether it is public or private.

The argument upon the part of plaintiff is in substance this: True, defendant has erected a wharf, which is not in fact in- tended or used as the terminus of its road at Pensacola, ade- quate yards and depots having been furnished by the defend- ant for all goods and passengers destined to Pensacola only; but the wharf has been erected to enable defendant to more conveniently carry out contracts for transportation beyond its own line, which it was not compelled to make, and which it could carry out by such agencies as it chose; but the plain- tiff, having goods destined for points outside of Florida, insists upon its right to use the road of defendant, not to carry these goods to Pensacola, but to defendant's wharf, so that plaintiff may there transfer them into vessels which it has arranged to take them; in order to do this it is necessary that defendant be compelled to share its possession of its own wharf, with the managers of these other vessels; for this possession plaintiff is prepared to make reasonable compensation. This right on the part of the plaintiff is urged as the result of the action of defendant in permitting the use of the wharf as stated in the plea. By such use it is contended that the defendant in effect dedicated the wharf to the public, or at least has granted to the public an interest in the use of the wharf.

We are of opinion that the wharf was not a public one, but that it was a mere facility, erected by and belonging to de- fendant, and used by it, in connection with that part of its road forming an extension from its regular depot and yards in Pensacola, to the wharf, for the purpose of more conven- iently procuring the transportation of goods beyond its own line, and that defendant need not share such facility with the public or with any carriers other than those it chose for the purpose of effecting such further transportation.

Neither the public nor the plaintiff had such an interest in the wharf as would give to either the right to demand its use on payment of reasonable hire. Nor was the wharf a depot

or place of storage of the defendant for goods, to be delivered
at or taken from tne city of Pensacola for transportation by
rail.   The defendant had adequate depots and yards in that
city for the proper storage of all merchandise committed to it
for delivery at Pensacola, or there received, to be transported
therefrom by defendant.    All consignees of goods at Pensa-
cola had equal facilities for obtaining them there.   Although
not bound originally to carry goods beyond its own terminus
at Pensacola, yet the defendant might agree to do so, and it
had the right, when duly authorized by the proper authorities,
to construct facilities to enable it to continue such transporta-
tion beyond the line of its railroad, by such other carriers as
it might agree with.   The city or state authorities in granting
the right to erect such facilities might, of course, have attached
such conditions as they thought wise, but in their absence
neither the public nor this plaintiff, as the owner of goods,
would have the right, on this state of facts, to go to the wharf
with vessels for the purpose of continuing transportation of
goods in competition with the defendant.   The defendant
never became a common carrier, as to this wharf, in the sense
that it was bound to accord to the public or to plaintiff a right
to use it upon payment of compensation.   We do not see that
the plaintiff had any right even to demand that the defendant
should carry plaintiff's goods on the rails defendant had laid
down to reach the wharf from its depot or yards at Pensacola,
the terminus of its road at that city.   Those rails were only
laid for the purpose of reaching the wharf, in order that de-
fendant might carry goods to it which it had undertaken to
forward, by itself or by vessels it had arranged with, beyond
its line.   Very likely it would be bound to carry plaintiff's
goods on this part of its rails, for the same purpose and on the
same terms it did for others, viz., in order that it might itself,
or through others it had contracted with, forward the goods
beyond its own line.   But plaintiff demands more than this;
it demands that defendant shall carry plaintiff's goods over its
rails thus laid, in order that plaintiff may itself forward its

goods by vessels of its own selection, and that defendant shall surrender possession of enough of its wharf to enable plaintiff to do so.

That the defendant had the right to choose its own agencies, and grant to them the exclusive privilege of access to its own wharf, which it built only for the purpose of continuing the transportation of goods which it had transported to the end of its line, has in effect been decided by this court. *Atchison &c. R. R. Co.* v. *Denver & New Orleans R. R. Co.*, 110 U. S. 667. In that case it was held that, although at common law the common carrier was not bound to carry beyond its own lines, yet it might contract to do so, and in the absence of statutory regulations prohibiting it the carrier might determine for itself what agencies it would employ to continue the transportation, and it was not bound to enter into agreements for each transportation with another because it had done so with one common carrier. Having the right, as the authorities prove, to decide what agencies it would employ for the purpose of transporting goods beyond its own line, and not being bound to enter into any contracts or arrangements with one person or carrier because it had so contracted or arranged with another, we think it follows that defendant was not obliged to permit the public to have access to its wharf, built for the purpose stated, simply because it granted such permission to those with whom it made arrangements of the kind set forth in the plea. While refusing to make any agreement with defendant for the further transportation of plaintiff's goods beyond Pensacola, plaintiff nevertheless claims a right to use the wharf erected by defendant for its own purpose, as already stated. This cannot be sustained. The principle stated in the above case is in substance recognized in *Gulf &c. Ry. Co.* v. *Miami S. S. Co.*, 86 Fed. Rep. 407; *Little Rock &c. Ry. Co.* v. *St. Louis &c. Ry. Co.*, 63 Fed. Rep. 775, affirming same case in 59 Fed. Rep. 400. The two last cases involved the construction of the Interstate Commerce Act, but they affirm the principle that a common carrier may agree with

such other carrier as it may choose, to forward beyond its own line the goods which it had transported to its own terminus. See also *Central Stock Yards Co. v. L. & N. Railway Co.*, 192 U. S. 568, 571; *Kentucky &c. Co. v. L. & N. R. R. Co.*, 37 Fed. Rep. 567; *Oregon &c. Co. v. Northern Pacific R. R. Co.*, 51 Fed. Rep. 465; *Ilwaco &c. Co. v. Oregon &c. Co.*, 57 Fed. Rep. 673.

The cases cited did not involve rights of parties to a wharf situated in a harbor, but we think that the right of one carrier to enter into arrangements with another carrier to forward its goods, and to refuse to do so with others, or to permit such others to avail themselves of the facilities constructed by the original carrier for that purpose, is not altered because the facility so constructed by it happens to be a wharf in the harbor of a city instead of some structure on land. The wharf may be a private one, and its owner may permit those only to have access to it that it may choose. A private wharf may exist on the shores of a navigable river or lake, or in a harbor of a city from which access is obtained directly to the sea. *Dutton v. Strong*, 1 Black, 23, 32.

It is to be remembered that the wharf was not in strictness the terminus of defendant for unloading its goods for Pensacola. The defendant had other depots and yards for that purpose. The main use of the wharf was only for the purpose of sending the goods brought by defendant, to other ports as a continuation of their carriage beyond the lines of the defendant's road. How much space, if any, it might devote to other vessels, with the managers of which it might make special arrangements, would naturally be for the defendant to decide, as also the particular terms of such arrangements. The conveniences of the wharf are, of course, necessarily limited.

It is well said by counsel for defendant in their brief that "The very nature of a wharf and its inadequacy to meet the demands of every incoming vessel necessitates that its use should be exclusively for those with whom the carrier enters into arrangements. The carrier has a right to select a strong

connection instead of a weak one, one that will give assurance of permanent business, instead of one that can offer only occasional shipment. If the free use is incompatible with the certain regular use by the steamer, or lines of steamers, with which the carrier is aligned, it is too clear for further reasoning that such carrier has the right to accept the latter and thereby exclude the former."

The reasons for permitting such use of the wharf are manifold. Without it the commerce of the country in the large cities would be cramped, if not very greatly damaged, by the uncertainty of finding quarters for the regular and swift unloading and loading of the vessels. But the capacity of a wharf is necessarily limited, and if the wharf were open to all comers in their turn there could be no certainty as to any particular vessels being able to reach the wharf at any definite time, and consequently there would be a like uncertainty as to when such vessel would be able to depart with its load. One, unexpected, so-called, tramp vessel might, by arriving a few hours in advance, take possession of all that was left of the wharf for the purpose of loading, and thus prevent the regular steamer, arriving a little later, from coming to the dock, unloading its cargo, and then loading with goods from the railroad. In this way there would be confusion in time and in the possession of the wharf by the different vessels, and its value for the purpose for which it was erected would be greatly reduced, if not wholly destroyed.

The principle herein recognized has also been affirmed by this court in what are known as the *Express Co. Cases*, 117 U. S. 1, where it was held (because the facilities were necessarily limited) that railroad companies had the right to contract with particular express companies for the transportation of the traffic of the latter over the lines of their railroads, and that the railroad company was not bound to transport the traffic of independent express companies over its lines in the same manner in which it transported the traffic of the particular companies contracted with; in other words, that the railroad

companies were not bound to furnish, in the absence of a statute, to all independent express companies, equal facilities for doing an express business upon their passenger trains.

These observations answer the contention of plaintiff that defendant, by erecting the wharf and using it in the way it does, has thereby devoted its property to a public use, and that it has thereby granted to the public an interest in such use, within the principle laid down in *Munn* v. *Illinois*, 94 U. S. 113. It has not devoted its wharf to the use of the public in so far as to thereby grant to every vessel the right to occupy its private property upon making compensation to defendant for the exercise of such right. The reasons we have already endeavored to give.

The judgments of the Circuit Court of Appeals and of the Circuit Court for the Northern District of Florida are reversed, and the case remanded to the latter court for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE HARLAN dissents.