GULF & S. I. R. CO. ET AL. *v.* BUDDENDORFT.

[70 South. 704.]

1. COMMERCE. *Interstate commerce commission. Jurisdiction of courts. Action for discrimination. State anti-trust law. Wharves. Discrimination in use.*

  Since only those matters must first come before the interstate commerce commission which involve administrative functions, such as rates, switching facilities, the rate of distribution of cars, and

similar questions of practice, the commission does not first have
to pass upon those questions which constitute a violation or de-
nial of unquestioned legal duties of giving service as a common
carrier *per se;* and so an action for damages for discrimination
in facilities on a wharf, the terminus of a railroad, need not be
brought before the commission before suit in the state courts.

2. INTERSTATE COMMERCE COMMISSION. *Jurisdiction of courts. State.
Anti-trust laws.*

Where the complaint in a state court is based on a conspiracy to
monopolize a business contrary to the state anti-trust law, prec-
edent action by the interstate commission is not required.

3. WHARVES. *Discrimination in use.*

When a railroad built a wharf at its terminal at the foot of a pub-
lic street under a charter given by the city such a wharf was
private property, and it was not discrimination to lease a portion
of the wharf to one ship broker for storage of parcel freight, to
the exclusion of another ship broker, the other portion of the
wharf being used for general merchandise, and all being given
equal terms and rates, and adequate facilities for receiving be-
ing provided for at such wharf.

4. SAME.

In view of the fact that the railroad company had the right to
carry on this business in the manner in which it was carried on
through its own servants, it likewise had the right to carry on
the same business in the same way through the agency of an-
other.

APPEAL from the circuit court of Harrison county.
HON. T. H. BARRETT, Judge.

Suit by R. F. Buddendorft against the Gulf and Ship
Island Railroad Company, and others. From a judgment
for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*B. E. Eaton,* for appellants.

*J. L. Heiss,* for appellee.

POTTER, J., delivered the opinion of the court.

This is an appeal from the circuit court of Harrison
county, from a judgment in the sum of seven hundred and

fifty dollars in favor of appellee, who was plaintiff in the trial court against the defendants, appellants here.

The plaintiff filed his original declaration, to which the defendant demurred, and the demurrer was overruled, whereupon the plaintiff filed an amended declaration and the defendant interposed the same demurrer, which was likewise overruled. The defendants then filed a special plea, to which the plaintiff interposed a general demurrer, which demurrer was sustained. The defendants thereupon declined to plead further, and a writ of inquiry was awarded, and damages in the sum of seven hundred and fifty dollars assessed in favor of the plaintiff and against the defendants.

The plaintiff in his amended declaration alleged that the defendant Gulf & Ship Island Railroad Company was a common carrier, and operated a railroad extending from Jackson, Miss., in a southerly direction to the south end of its pier, or wharf, located in the harbor of Gulfport; that the southern end of said pier or wharf was the southern terminus of the said railroad and a part of its common carrier system, and had always been so held out to the public, and that the public had a right to ship commodities over its track extending to the end of the pier, and from thence to be transported for further carriage by such vessels as the shipper might engage for such service. The Gulfport Shipping Company, one of the defendants, according to the allegations in the declaration, was a partnership concern, domiciled at Gulfport, and professed to be engaged in the general business of engaging freight, but was "in fact and truth the Gulf & Ship Island Railroad Company, operating under the above-styled name for the purposes hereinafter named."

The declaration alleged that J. W. Corry & Co., also a defendant, was a corporation domiciled at Gulfport, and engaged in the general business of ship brokers, which business consists of making freight engagements and contracts of every kind for transportation by water at said port. The plaintiff then alleged "that prior to his

undertaking, hereinafter mentioned," he had been, for some forty years, engaged in the business of general ship broker and ship agent in the city of New Orleans, during which time he had built up an "extensive and valuable acquaintance and connection for said business in this and in foreign lands, and was extensively known and· trusted as being throughly qualified for the business."

The plaintiff then charged that when he first established himself in the business of ship broker and agent at Gulfport, he was given assurances by the railroad company, through its vice president and its general freight and passenger agent, that the railroad company would welcome him and afford every facility and accommodation necessary to the establishment of the business, and would furnish him rates therefor at his request, and that, relying thereon, he began the establishment of his business by soliciting business from various points in ths state and beyond for the shipment of cotton, cotton seed meal, cotton seed cake, staves, and other merchandise, and did secure offers of cargoes for shipment by water from Gulfport, and did secure offers of steamship and sailing vessel rates for the transportation of same from said pier and wharf at acceptable rates. The plaintiff then charged that about the time he had completed his arrangements, the defendants "did conspire, confederate and agrée among themselves to perfect a monopoly of all the export and import business from the harbor of Gulfport, on merchandise other than lumber and naval stores, in this, that the defendant railroad company had heretofore, to wit, during the year of 1909, made a formal and pretended lease of the greater portion of the available free space on said wharf to the said J. W. Corry & Company for the erection of said warehouses or sheds thereon in the name of the said J. W. Corry & Co., while in fact said sheds were erected for or by said railroad company with the distinct agreement and understanding that said lease should, within a short time agreed upon, be transferred back to the said railroad company, which was

thereafter done; that thereafter, to wit, during the early part of 1910, as a part of said agreed plan, the said railroad company, through its president and other officials, organized the said Gulfport Shipping Company, and owned and controlled same, having for its officers the said certain officials of said railroad and its confidential men, and that the said agreement as thus completed was for the purpose of effecting a monopoly upon all said business at said pier and thereby to exclude all competition as to rates and vessels, so as to fix said rates free from competition and to preserve to themselves all the profits therefrom; that as a part of said preconceived scheme, plan, and agreement, the Gulfport Shipping Company, upon its organization, made the said J. W. Corry & Company its exclusive agent and its control in all business of said character at said port.

Plaintiff further alleged that thereafter he endeavored to secure rates from the defendants on merchandise for export, and endeavored to procure facilities upon the wharf for handling the same similar to facilities afforded Corry & Co.; that these facilities were denied on the ground that the exclusive rights to same belonged to Corry & Co., and that they would not be shared with plaintiff, who was a competitor of Corry & Co.; that in May, 1910, plaintiff sought business from A. Le More & Co., of New Orleans, but that an agent of the defendant railroad company wrote said firm that the Gulfport Shipping Company was a proper party to handle the shipment, and that the refusal of the wharf facilities to the plaintiff prevented him from securing this business; that a similar situation prevented plaintiff from making a shipment of two thousand tons of cotton seed cakes from Gulfport in 1910; that the denial of facilities aforesaid prevented plaintiff from engaging in the business of ship broker; and that the defendants had conspired and confederated against him, and had violated the statutes of Mississippi prohibiting trusts and combines; and dam-

ages were asked for actual and punitive in the sum of ten thousand dollars.

To this declaration the defendant filed a demurrer setting up the following grounds: (a) The commerce shown by the declaration in which the plaintiff was to be engaged was interstate. (b) It was necessary for all complaints with reference to discrimination in the movement of interstate commerce to be first presented to the Interstate Commerce Commission. (c) No suit of any kind can be maintained for an alleged discrimination with reference to the movement of interstate commerce until the question of discrimination has been submitted to and passed upon by the Interstate Commerce Commission. (d) In no event has this court the jurisdiction to try and determine the issues here involved.

This demurrer was also overruled, and defendants filed a special plea, in substance, as follows:

That the defendant railroad company had adequate terminal facilities in the city of Gulfport for the receipt and delivery of merchandise committed to it for transportation and delivery to the city of Gulfport, and that, while there is a physical connection by rail between its depots and yards and wharves referred to in the declaration, and while the railroad company is authorized and empowered by its charter to locate, construct, and thereafter to own and maintain and use suitable wharves, piers, breakwaters, basis, and depots and other appurtenances thereon for loading and unloading, receiving and discharging, freight and passengers from or to sea-going, lightering, and coasting vessels, neither the provisions of the charter nor any statutory law compels or requires, or did compel or require, the railroad to construct and maintain the wharf mentioned in plaintiff's declaration; that the wharf so referred to was constructed by the railroad company at an expense of several hundred thousand dollars, and was maintained at an enormous expense; and that the wharf was constructed for the purpose of procuring the transportation of goods beyond its own line

in connection with such ocean carriers as it might select with which jointly to issue through export bills of lading from interior points to foreign destinations, but that no other business was ever done at the wharf except the transportation by the railroad company in cars on its railroad of articles of commerce to and from vessels lying at the said wharf, and of commerce brought to or to be transported by such vessels and the loading and unloading of same into and from said vessels.

Defendants further allege in the special plea that after the construction of the wharf in question, the railroad company promulgated its rules and regulations, by which it was expressly provided that the wharf was the private property of the Gulf & Ship Island Railroad Company, and that vessels would be permitted to come and lie at said wharf only upon the consent of the railroad company, according to its rules and regulations promulgated from time to time. It was further set up that the wharf was ready for use in the year 1902, and that the rules and regulations above mentioned had been in force and effect continuously from that time up to and including the time mentioned in plaintiff's declaration, and to the present day; that in its rules, the railroad company expressly reserved the right to give preference at its wharf to ships engaged in the transportation of parcel shipments from said port and that no boats or vessels, for the purpose of taking on or unloading cargoes, had ever been permitted to occupy a berth at said wharves except upon compliance with the rules and regulations prescribed by the railroad company, with the stipulation that the wharves were and are the private property of the railroad company, and that the vessels might tie up to or remain at the wharf only in strict compliance with such rules and regulations; that the recognition of the rules and regulations above mentioned had, at all times, been required before boats were permitted to berth at the wharf, and that the purpose of reserving such preference was the desire and effort of the railroad company to build

up the exportation of general cargoes from the port of Gulfport, and to build up this business it was necessary for the railroad company to issue, or have issued, in connection with some ocean carriers, through bills of lading from points of origin to foreign points of destination; that the railroad company, upon issuing the bills of lading mentioned, was liable both to the shippers and consignees for the safe, proper, and prompt transportation of such shipments to foreign destinations; and, because of the responsibility it had assumed, that it was necessary for the railroad company to secure an ocean carrying agent of such financial strength and with facilities as would be adequate to the successful carrying on of the aforesaid enterprise. It was then alleged that the facilities offered by J. W. Corry & Co. appeared to the railroad to be the best, and that Corry & Co. was an established carrier of ocean freights, and was financially responsible, and therefore Corry & Co. were authorized by the railroad company to occupy the space on the wharf mentioned in plaintiff's declaration, for the purpose of aiding the railroad company in the building up of general cargo shipments for export and for affording necessary financial protection to the railroad against loss and damage because of the issuance by it of through bills of lading for the movement of such commodities in connection with Corry & Co.; that the Gulfport Shipping Company was financially solvent, and was a responsible shipping company, organized for the purpose of enlarging the export movement from Gulfport, and that with the permission of the railroad company it acquired from Corry & Co. the rights and privileges as to space and warehouses and berths for vessels that had previously been granted Corry & Co.; and that the shipping company carried out the business arrangement theretofore existing between Corry & Co. and the railroad company for export movements of commerce. The plea then sets out that the plaintiff was engaged in the business of ocean freight carrying, but that he was not satisfactory to

the defendant for the issuance of through export bills of lading in connection with the movement of foreign commerce, but that, through the agency of Corry & Co. and the Gulfport Shipping Co., the railroad company was enabled to and did receive all commodities for export desiring an outlet through the harbor of Gulfport, and that the movement of same was in no wise hindered, obstructed, or delayed because of any arrangements existing between the defendants for the movement of commodities by water from the port of Gulfport.

According to the allegations of the special plea, the space allotted Corry & Co. occupied approximately five hundred feet at the south end of the pier, and that there remained outside of this five hundred feet an additional space of approximately two thousand two hundred feet, to which, under the rules and regulations of the railroad company, vessels other than general cargo vessels were permitted to occupy berths and take on cargoes; that there were at the times alleged in the plaintiff's declaration, and still are, many shippers in connection with whom no through export bills of lading are issued by the defendant, exporting through the port of Gulfport, who charter and own vessels and procure ocean transportation for their export products; that in such instances the shippers load directly from the cars upon which the export commodities were placed alongside the various ships, and that shipments so made are designated "full cargo shipments;" that the "full cargo shipments" constituted a large part of the export movement from Gulfport, and that vessels carrying "full cargo shipments," upon being chartered, and the rules and regulations promulgated by the railroad company subscribed to, were and now are assigned berths at said wharf, each vessel in its regular turn, and that the plaintiff was given the opportunity, so far as "full cargo shipments" were concerned, upon subscribing to the rules and regulations, of having vessels occupy berths at the wharf in the same manner and in

the same extent that were offered other shippers of "full cargo shipments."

It was further alleged that there was no other space or room to apportion to the plaintiff, or any one else, for the purpose of storage, except at an inconvenience and loss to merchants engaged in "full cargo shipments," or the lessening of the space alloted Corry & Co. and the Gulfport Shipping Company for parcel shipments, and that as to parcel shipments moving through the port of Gulfport, the facilities and advantages of the space and wharves occupied by Corry & Co. and the Gulfport Shipping Company were offered alike and without discrimination to all shippers and to all available points, and that Corry & Co. and the Gulfport Shipping Company received and transmitted on equal terms all shipments of commodities moving through Gulfport destined to foreign ports. The defendant then denied that it was under any legal obligation to furnish plaintiff the facilities alleged in his declaration to have been denied.

The plaintiff then filed a general demurrer to the above plea, and the demurrer was sustained. The defendant declined to plead further, and the judgment was entered accordingly.

The questions we have to determine are: First, whether this court has jurisdiction, or whether this is a matter within the exclusive control of the Interstate Commerce Commission; and, secondly, whether the special plea set out above constituted a good defense to plaintiff's declaration. It is strongly urged by the defendant railroad company that this is a matter over which the state courts have no jurisdiction, and that the determination as to whether the matters complained of in the plaintiff's declaration was, or was not, an unjust discrimination is for the Interstate Commerce Commission and not the courts; that the commerce in question comes within the classification of commerce which is subject by the act to regulate commerce, passed by Congress,

to the control and direction of the Interstate Commerce Commission, and, likewise, the subject-matter of the controversy, the wharves of the railroad company and its practices relating thereto, for the reason that they are facilities used in connection with the movement of interstate and foreign commerce, are likewise embraced in the act to regulate commerce, and subject to the supervision and jurisdiction exclusively of the Interstate Commerce Commission. In our opinion, this contention is not well founded. As stated in the able brief of counsel for appellee in this case:

"It has been repeatedly held by the United States supreme court that only those matters must first come before the Interstate Commerce Commission which involve administrative functions, such as rates, switching facilities, the rate of distribution of cars, and similar questions of practice; that the Commission did not first have to pass upon those questions which constituted a violation or denial of unquestioned legal duties of giving service as a common carrier *per se*. The Commission was given exclusive jurisdiction of administrative matters for the reason that therein they were not deciding questions of law, or judicial questions, but questions of the reasonableness of rules, procedure, and business supervision on which opinions might well differ; and therefore, to prevent contrary holdings on similar questions and to insure uniformity, the court holds the Commission's jurisdiction on such matters to be exclusive. To permit different courts or bodies to pass upon such questions might result in what one would hold reasonable on questions of rates, facilities, switching charges or car service, etc., another might hold unreasonable, thereby creating the discrimination that the act sought to avoid."

See *T. & P. R. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; *L. & N. Railroad Co.* v. *F. W. Cook Brewing Co.,* 223 U. S. 70, 32 Sup. Ct. 189, 56 L. Ed. 355; *Penn R. R. Co.*

v. *Puritan Coal Mfg. Co.*, 237 U. S. 121, 35 Sup. Ct. 484,. 59 L. Ed. 867; *Eastern R. R. Co. of New Mexico* v. *Littlefield*, 237 U. S. 140, 35 Sup. Ct. 489, 59 L. Ed. 878.

Not only does the declaration in this case charge a discrimination in favor of Corry & Co. and the Gulfport Shipping Company, but it also charges a conspiracy to monopolize the business in which plaintiff was engaged, contrary to the anti-trust laws of this state. As to whether or not a violation of the anti-trust statutes is presented is clearly a matter within the province of this court to inquire into; and, for that purpose, it undoubtedly has jurisdiction.

We now come to the question of whether or not the special plea of defendant was a sufficient defense at law to plaintiff's declaration, and this resolves itself into the question of whether or not the defendant was justifiable in refusing facilities to the appellee for the purpose of storing freight on its wharf that it afforded to Corry & Co.; for there is no question in this case with reference to any refusal on the part of the railroad company to receive any freight offered it for transportation, and there is no complaint that any discriminaiion between shippers has been made. The special plea sets up that all persons desiring to make shipments were afforded the same services and the same rates by the railroad company, which owned and controlled the wharf. The special plea sets up that adequate depots and yards were furnished by the railroad in the city of Gulfport for the receipt and delivery of merchandise committed to it for transportation; that the wharves in question were its private property and constructed and maintained by it at great cost; that the wharves were constructed for the purpose of more conveniently transporting commerce beyond its own line in connection with such ocean carriers as it might select with which to issue through bills of lading, and that no other business had been done at that wharf except transportation in connection therewith; that at no time had the use of the wharf been permitted except

upon the distinct understanding of the shippers and own-- ers that the wharf was a private wharf, and that in ac- cordance with the rules regularly adopted by the railroad company that certain kinds of vessels and certain kinds of cargoes were to have preferred space and facilities; that the commerce carried on in connection with Corry & Co. was of the kind for which a preference was inten- ded and made. In the case of *L. & N. R. R. Co.* v. *West Coast Naval Stores Co.,* 198 U. S. 483, 25 Sup. Ct. 745, 49 L. Ed. 1135, the supreme court of the United States says:

"We do not see that the fact that the wharf was erected under authority from the city, at the foot of a public street of the city, makes any material difference in the character of the wharf, or that the right of plaintiff to select its own vessels to continue from that wharf the transportation of its goods is, on that ground, enhanced, or the right of defendant to control the wharf for its own use when erected is thereby diminished. The right to erect the wharf was granted by the proper authorities, and, so far as the record shows, it was granted without imposing any conditions as to its use by the public. We think the plaintiff had no right of access to the wharf foun- ded simply upon the fact that it was erected under proper authority, in the harbor of Pensacola, and at the foot of one of the public streets of that city. The question of the rights of plaintiff must really turn upon the character of the use of the wharf, whether it is public or private.

"The argument upon the part of plaintiff is, in sub- stance, this: True, defendant has erected a wharf which is not in fact intended or used as the terminus of its road at Pensacola, adequate yards and depots having been furnished by the defendant for all goods and pas- sengers destined to Pensacola only; but the wharf has been erected to enable defendant to more conveniently carry out contracts for transportation beyond its own line, which it was not compelled to make, and which it could carry out by such agencies as it chose; but the plain-

tiff, having goods destined for points outside of Florida, insists upon its right to use the road of defendant, not to carry these goods to Pensacola, but to defendant's wharf, so that plaintiff may there transfer them into vessels which it has arranged to take them. In order to do this it is necessary that defendants be compelled to share its possession of its own wharf with the managers of these other vessels. For this possession plaintiff is prepared to make reasonable compensation. The right on the part of the plaintiff is urged as the result of the action of defendant in permitting the use of the wharf as stated in the plea. By such use it is contended that the defendant in effect dedicated the wharf to the public, or at least, has granted to the public an interest in the use of the wharf. We are of the opinion that the wharf was not a public one, but that it was a mere facility, erected by and belonging to defendant, and used by it, in connection with that part of its road forming an extension from its regular depot and yards in Pensacola, to the wharf, for the purpose of more conveniently procuring the transportation of goods beyond its own line, and that defendant need not share such facility with the public or with any carriers other than those it chose for the purpose of effecting such further transportation. Neither the public nor the plaintiff had such interest in the wharf as would give to either the right to demand its use on payment of reasonable hire. Nor was the wharf a depot or place of storage of the defendant for goods to be delivered at or taken from the city of Pensacola for transportation by rail. The defendant had adequate depots and yards in that city for the proper storage of all merchandise committed to it for delivery at Pensacola, or there received, to be transported therefrom by defendant. All consignees of goods at Pensacola had equal facilities for obtaining them there. . . . . "

The principle was laid down, in what are known as the *Express Cases,* 117 U. S. 1, 6 Sup. Ct. 542, 29 L. Ed. 791, that railroad companies have the right to contract with

particular express companies for the transportation of traffic over their railroads, and that the railroad company was not bound to transport the traffic of an independent express company over its lines in the same manner in which it transported the traffic of the particular company contracted with; in other words, that the railroad company was not bound to furnish, in the absence of statutes, to all independent express companies, equal facilities for doing an express business upon their passenger trains.

The case of *Y. & M. V. Railroad Co.* v. *Crawford,* 65 So. 462, L. R. A. 1915C, 250, decides the principle of law involved in this case. In that case it was decided that a railroad company, having made a contract with one log-loading company to the exclusion of other companies engaged in a like business to load its cars, did not violate the anti-trust statutes, and that this contract did not constitute an illegal monopoly. The court in that case said:

"We are of opinion that the contract made with the Valley Log Loading Company under the circumstances was not an illegal contract. The arrangement which the railroad company had made with reference to the loading of logs and furnishing to parties its cars, engines, and crews was not in any sense a function or duty required of the company in its capacity as a common carrier. There was no legal obligation resting upon the railroad company to furnish its cars, engines, and crews to individuals carrying on a log-loading business, or to receive logs to be loaded on its cars along the right of way between stations. The railroad company could itself have undertaken this to the exclusion of everybody else. This is not controverted. It would then monopolize the business in a sense, but not illegally. In the case of *Houck* v. *Wright,* 77 Miss. 483, 27 So. 617, this court says: 'The legislature, by the chapter on Trusts and Combines, did not intend to debar a person from conducting his own private business according to his own judgment.' It was not the purpose to limit either the term used in the

Constitution or in the statute by any narrow definition, but leave it to the courts to look beneath the surface, and from the methods employed in the conduct of his business to determine whether the association or combine in question, no matter what its particular form should chance to be, or what might be its constituent elements, is taking advantage of the public in an unlawful way. This case and this extract from it were cited with approval of this court in the case of the *Telephone & Telegraph Co.* v. *State*, 100 Miss. 116, 54 So. 670, 39 L. R. A. (N. S.) 277.''

There is no complaint in this case that every shipper did not enjoy the same rights and privileges that were extended to every other shipper. The plea shows that the shipping public enjoyed the entire rights upon the wharf, and the small shippers not having enough cargo for an entire ship, by means of concentrations upon the pier, or by pooling freight, could make parcel shipments, and in so doing avail themselves of the benefits of the market; and the railroad company alloted on the wharf the space in question for this purpose. No discrimination of any kind is charged with reference to any shipments of freight offered to the railroad company at the wharf.

In our opinion, the railroad company had the right, to the exclusion of every one else, to have undertaken to store the parcels received at its wharf at Gulfport for shipment; and it could have made the contracts of shipment of same with vessels of its own choosing, to the exclusion of every one else. In view of the fact that the railroad company had the right to carry on this business in the manner in which it was carried on through its own servants, it is clear to us that it would have the right likewise to carry on the same business in the same way through the agency of Corry & Co. and the Gulfport Shipping Company. The special plea sets up a sufficient defense to plaintiff's declaration. This cause is therefore reversed and remanded.

*Reversed and remanded.*