# WEEMS STEAMBOAT COMPANY OF BALTIMORE *v.* PEOPLE'S STEAMBOAT COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 181.   Argued April 26, 1909.—Decided June 1, 1909.

A wharf on a navigable stream is private property and subject to the absolute control of the owner as other property is.

The rights of a riparian owner on a navigable stream are governed by the law of the State in which the stream is situated, but subject to the paramount public right of navigation.

One of the rights of a riparian proprietor is to build private wharves out so as to reach the navigable waters of the stream, and this right has been affirmed by the courts of Virginia; but a wharf obstructing navigation or private rights of others or encroaching upon any public landing may be abated.

A private wharf on a navigable stream is the exclusive property of the owner of which he can only be deprived in accordance with established law, and, if taken for public use, on compensation being made.

A private wharf on a navigable stream is not held by the owner, as a railroad is, subject to the public use, and a third person has no right to demand its use even on tendering compensation therefor and even though there may be no other wharf at the place. *Munn* v. *Illinois*, 94 U. S. 113, distinguished. *Louisville & Nashville Railway Co.* v. *West Coast Naval Stores Co.*, 198 U. S. 483, followed.

The public obtains no adverse right against the owner of a private wharf by mere user; in the absence of an intent on the owner's part to dedicate, and an acceptance by the public authority, the use is mere license subject to withdrawal.

The remarks of Mr. Justice Bradley in *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, as to the right of the owner of a private wharf to make arbitrary charges are *obiter* and are not applicable to the present case.

141 Fed. Rep. 454, and judgment of Circuit Court of Appeals, affirming it, reversed.

THE complainant (the above-named petitioner) commenced this suit in the Circuit Court of the United States for the Eastern District of Virginia against the defendant, the Peo-

ple's Steamboat Company and its officers and agents, for the purpose of obtaining an injunction restraining the corporation defendant from using certain wharves on the Rappahannock River, in the State of Virginia, of some of which the complainant was the owner in fee, and of others the lessee of the exclusive use from the owners. The complainant contended that it had the exclusive right to the use of such wharves, either as owner or lessee, and that the defendant illegally and against the will of the complainant insisted upon using them to carry on its business, although offering to pay the complainant what was the reasonable value of the defendant's use of such wharves.

The corporation and the individual defendants filed joint and separate answers, setting up a claim of right to the use of such wharves upon compensation being made therefor, and the case came before the court on motion of complainant for a temporary injunction, as prayed for in the bill of complaint. The court, without then passing upon any other question, ordered that the matter be referred to a special master for the purpose of taking such evidence as might be submitted to him by either party, or which he might find necessary to take, bearing upon the title to the several wharves mentioned in complainant's bill and claimed by complainant, and to ascertain what rights passed to complainant with the acquisition of such wharves and whether or not the wharves were public or private wharves. Pursuant to this order of reference, hearings were had before the master, who returned the evidence taken before him with his opinion in favor of granting the injunction as prayed for by the complainant, on the ground that the wharves in question were private wharves owned or leased by the complainant, who had the exclusive right to their use. The facts found by the master were not overruled, but his conclusions of law were not concurred in by the court, and the preliminary injunction was refused. The case was then submitted to the court for trial upon all the evidence taken, and the bill was dismissed with costs. 141 Fed. Rep. 454.

The complainant appealed from the decree of dismissal to the Circuit Court of Appeals for the Fourth Circuit, where it was affirmed upon the opinion of the Circuit Court.

The complainant then applied to this court for a writ of certiorari to bring the case here, which petition was granted, and the case has been submitted to this court upon the briefs of respective counsel.

*Mr. St. George R. Fitzhugh* and *Mr. George Weems Williams*, with whom *Mr. Nicholas P. Bond* was on the brief, for petitioner:

The mere fact that property is owned by a common carrier does not make such property subject to any and every public use. Neither does the fact that property may be used by a common carrier in its business as such subject it to any use that may be of supposed or actual benefit or advantage to the public, but the carrier fulfills its obligation if it permits the public, without discrimination, to use such property in transacting business with it as such carrier. *Donovan* v. *Pennsylvania Co.*, 199 U. S. 279; *Pittsburg &c. Ry. Co.* v. *Bingham*, 29 Ohio St. 364, 370; 1 Farnham on Waters and Water Rights, § 66, p. 297; Same, § 110, pp. 509, 510; Same, § 112, p. 523; Same, § 113*b*, pp. 533, 534; *King* v. *Russell*, 6 Barn. & C. 566; *Yates* v. *Milwaukee*, 10 Wall. 497; *Weber* v. *Board of Harbor Commissioners*, 18 Wall. 57.

The right to maintain private wharves in a navigable river was recognized again in *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, and in *Ill. Cent. R. Co.* v. *Illinois*, 146 U. S. 387, 445, 446, and in *Dutton* v. *Strong*, 1 Black, 23.

The right of a riparian owner as to the erection of wharves in Virginia under statute, and the decisions of Virginia courts, is as follows:

Code of Virginia of 1887, § 998:

"Any person owning land upon a water course may erect a wharf on the same, or pier or bulkhead in such water course opposite his land, provided the navigation be not obstructed,

nor the private rights of any person be otherwise injured thereby. But the court of the county in which said wharf, pier or bulkhead is, after causing ten days' notice to be given to the owner thereof of its intention to consider the subject, if it be satisfied that such wharf, pier or bulkhead, obstructs the navigation of the water course, or so encroaches on any public landing as to prevent the free use thereof, may abate the same." See *Norfolk City* v. *Cooke*, 27 Gratt. 430, 435; *Railway Co.* v. *Faunce*, 31 Gratt. 761, 764, 765; *McCready* v. *Commonwealth of Virginia*, 27 Gratt. 985; *Hardy* v. *McCullough*, 23 Gratt. 251, 262.

The statutes of Virginia and the decisions of its courts govern in the determination of the rights of a riparian owner in the navigable waters of that State. *Shively* v. *Bowlby*, 152 U. S. 1, 24–26; *Illinois Central Ry. Co.* v. *Illinois*, 146 U. S. 387; *St. Anthony Falls* v. *St. Paul*, 168 U. S. 349.

The plaintiff is not, because it is a common carrier, bound to permit, upon any terms, vessels competing with its own for the same business to make use of its wharves for the purpose of such competition, and can exclude not only competitors, but all persons, from the use of its wharves, except those who have business to transact thereat with it as a common carrier.

The fact that public roads have been built to the shore ends of certain of these wharves has no effect on their character as private wharves or the plaintiff's rights to limit their use to its own patrons or other persons having business with it as a common carrier.

The fact that nearly all these wharves are built in the open country, along the banks of the river, and not in cities or towns or harbors or places where there may be more than one landing place, makes no difference in the real character of these wharves, whether public or private.

The law does not declare that a wharf, which is public in the sense that the owner thereof has permitted the public to use it for any purpose upon payment of compensation, shall for all time remain public, but allows the owner thereof to change the

public character of such a wharf by a proper and reasonable notice. See *Louisville & Nashville R. R. Co.* v. *West Coast Naval Stores Co.*, 198 U. S. 483; *Exterkamp* v. *Covington Harbor Co.*, 104 Kentucky, 796; *Brisbine* v. *St. Paul Railway Co.*, 23 Minnesota, 114, 129, 130; *California Nav. Co.* v. *Union Co.*, 126 California, 433; *Irwin* v. *Dixon*, 9 How. 33; *Coney* v. *Brunswick St. Co.*, 42 S. E. Rep. 498; *S. C.*, 116 Georgia, 222; *Mills* v. *Evans*, 100 Iowa, 712. See also *Bogert* v. *Haight*, 20 Barb. 251.

The opinion of the Circuit Court complained of herein disregards the principles of the cases which hold that a common carrier has the right to select its agencies for conducting its business and to decline to allow other carriers the use of its terminal facilities. *Atchison &c. R. R.* v. *Denver & N. O. R. R.*, 110 U. S. 667; *Express Cases*, 117 U. S. 1; *St. Louis Drayage Co.* v. *Louisville & N. R. R.*, 65 Fed. Rep. 39.

That a wharf owner may revoke a license to use his property is settled in the following cases: *Railroad Company* v. *Hanning*, 15 Wall. 649; *Ilwaco &c. Co.* v. *Oregon Short Line*, 57 Fed. Rep. 673; *Coney* v. *Brunswick &c. Co.*, 116 Georgia, 222; *Bogert* v. *Haight*, 20 Barb. 251; *Heaney* v. *Heaney*, 2 Denio, 625; *Swords* v. *Edgar*, 59 N. Y. 28, 31, 32. Compare *O'Neill* v. *Aunett*, 27 N. J. L. 290; see also 29 Am. & Eng. Ency., 1st ed., 64.

*Mr. William D. Carter*, with whom *Mr. Ellerbe W. Carter* was on the brief, for respondents:

The right to "wharf out," neither under the common law nor by statute, is conferred upon any common carrier as such. No common carrier takes such right by Magna Charta, nor has it such "*jus naturalis.*" The privilege of constructing pier wharves, and duties which arise when the privilege is exercised, pertain only to riparian proprietors. If the "plaintiff" owns a wharf, it is as a riparian proprietor, and not because it is a common carrier, that it is permitted to hold, maintain, and enjoy the same. *Hunt* v. *Ill. Central R. R.*, 184 U. S. 77, 86;

*S. C.*,146 U. S. 387; *Yates.* v. *Milwaukee,* 10 Wall. 497; *Dutton* v. *Strong,* 1 Black, 23; Virginia Code, §§ 998, 999. ·

Equity and justice require that the appropriate rules of law be made to apply to every riparian proprietor alike. One riparian proprietor who has exercised his privilege of constructing a wharf may enjoy his structure in his own way, and put the wharf to his own use alone, or to his own use collectively with others, provided the uses are restricted and the location and surrounding circumstances permit such use without injury to the public. *Dutton* v. *Strong,* 1 Black, 23; *L. & N. R. R. Co.* v. *West Coast Naval Stores Co.,* 198 U. S. 483.

The title to navigable waters and to the soil under water in navigable rivers, is and must be held in perpetual trust for the public as beneficiary. *Martin* v. *Waddell,* 16 Pet. 410; *Shepherd's Point Land Co.* v. *Atlantic Hotel,* 44 S. E. Rep. 39; *Smith* v. *Maryland,* 18 How. 71, 74.

Though his domain stops at low-water mark, the riparian proprietor (and he alone) may build out a wharf structure in aid of navigation. *Mobile Transp. Co.* v. *Mobile,* 13 L. R. A. 352; 1 Farnham on Waters, p. 227, § 113*b; Dutton* v. *Strong,* 1 Black, 23; *Yates* v. *Milwaukee,* 10 Wall. 497.

The legislature of Virginia has, by statutory enactment, declared this rule of law also. Code of 1887, §§ 998, 999.

In building a wharf under § 998, the riparian proprietor exercises an inherent privilege which he enjoys under the law. Whether he makes of his wharf a private "staith" or a public facility depends mainly on the use to which it is subsequently put. He may charge for the use of his wharf, but the charge must be "reasonable" if he serves the general public. Code of Virginia, § 999; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691; *Riddick* v. *Dunn,* 58 S. E. Rep. 493; *Mobile Transp. Co.* v. *Mobile,* 13 L. R. A. 352; and see *Gibler* v. *St. Louis Terminal Assn.,* 203 Missouri, 208, for an exposition of the duties owed the public by a toll bridge owner, and what differentiates between such a public servant and a common carrier. Both serve the public, but a common carrier furnishes transporta-

tion. The duties of a wharf owner serving the public are the same as those of a bridge owner, with added responsibilities on the wharf owner to serve both the public or individual patrons coming to his wharf to secure the services of a carrier, and the carrier public coming to the wharf in the line of securing business or discharging traffic.

If the circuit court of a Virginia county permit any individual to build out a wharf from a "public landing" under Code, § 999, *supra*, it needs no argument to show that the public is the riparian proprietor, and the licensee builds under the power or privilege of the licensor—the county, or, in other words, the public.

Every such wharf is irrevocably affected with a public interest "*ab condide*," no matter how often it may be conveyed and pass from vendor to vendee. *Weber* v. *Board of Harbor Comrs.*, 18 Wall. 61.

Under the decision in *Dutton* v. *Strong*, 1 Black, 23, a private wharf, when maintainable at all, must be devoted habitually to private business. Even though built by a private proprietor opposite his own shore (a condition the record shows does not exist as to at least some of the wharves in controversy here), if devoted to purposes of public commerce for compensation, it is a public wharf. Lord Hale, "De Portibus Maris"; and cases, *supra*.

The riparian owner who has built a wharf from his shore out into the navigable waters of the Rappahannock and invited the public to use his wharf, and who for hire has habitually so served the public, cannot burden that service with any such "condition" as that the shipping public must take passage over his wharf, either upon sailing vessels or else patronize exclusively the steamers of a single carrier. *Munn* v. *Illinois*, 94 U. S. 5.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

It appears that the complainant herein is a corporation of

the State of Maryland and the defendant is a corporation of
the State of Virginia, the individual defendants being officers
or agents of such corporation and citizens of the same State.
The complainant has been for a long time engaged in the busi-
ness of transportation of passengers and freight between Balti-
more and various landings or places on the Rappahannock
River, in the State of Virginia, and for many years has been
the owner or lessee of the wharves on that river mentioned in
the bill of complaint.  Some time before the commencement
of this suit the defendant began the transportation of pas-
sengers and freight between Fredericksburg and Urbanna, in
Virginia, and along the Rappahannock River in that State,
stopping at the same wharves on that river as complainant
and engaged in the same business.  In order to transact its
business it made use of the wharves owned or leased by the
complainant, in spite of the opposition of complainant and
against its protests, although defendant offered to make com-
pensation for the reasonable value of the use which it made
of such wharves in the prosecution of its business, which offers
were refused by the complainant, and it notified the defend-
ant to desist from the use of the wharves owned or leased by
it.  The action of the defendant in making use of the wharves
of complainant was based upon the contention that the de-
fendant had the legal right to do so, inasmuch as in many
cases there were no other wharves at such places where the
defendant desired to land, and that it was necessary to use
such wharves in order that defendant might prosecute its busi-
ness of transporting passengers and freight to and from the
various landings on the river, and because the wharves had for
many years been used by the public.

It was proved before the master (and we take the facts in the
case, as found by him), that the complainant was the owner
in fee of five different wharves along the banks of the river and
of the land under the water where the wharves were built; also
that the complainant was the lessee of eight wharves owned by
different persons who had, prior to the commencement of this

suit, leased their exclusive use to the complainant, and that it was during the time of the existence of the leases that the defendant entered upon and used the wharves for its own purposes. The master reported that there was no evidence of any prior dedication of any of such wharves to the public, either those owned by or leased to complainant, and, of course, none of any acceptance thereof by the public authorities, nor was there any evidence of any condemnation of any of such wharves on the part or in behalf of any public authority; that the wharves were private wharves, either owned by the complainant in fee or leased by it, for its exclusive use, from the owners in fee of such wharves. The most that can be said is that in some cases the former owners of the wharves now owned by the complainant, as well as the lessors of the wharves before they leased the same, and while owners thereof, had built them and had permitted the public to use them, and had frequently received compensation for such use, and in many cases the use had been without compensation. After the sales of the wharves and after the execution of the leases neither the former owners nor the lessors made any claim to the use of the wharves or to any right to permit others to use them, either with or without compensation, and the complainant formally notified the defendant that the complainant refused to permit such use any longer. It appeared that public roads had been made from the surrounding country to the places where these private wharves had been built sometimes before the building of the wharves and sometimes the roads had been laid out after such wharves had been built. The use that had been made of the wharves after they had been built and prior to the purchase or leasing by the complainant was nothing more than such as was founded upon a mere license on the part of the owners and without any dedication of the wharves to the public or any acceptance on the part of the public further than by indiscriminate user, and with no taking or condemnation of the right to use the wharves as public wharves. The title to the wharves as private property remained unaffected in any

way, and there was nothing to prevent the withdrawal of license to use at any time. In some cases the wharves were the only ones that had been built at the places where such wharves existed and the use of such wharves was convenient for the transaction of the defendant's business.

The complainant is in the actual possession of all the wharves, those which it has purchased and those which it has leased, and its title and right to the exclusive possession of all of them is recognized and assented to by both grantors and lessors, and not one of them makes any claim of any interest in the wharves as against complainant.

The Circuit Court, in speaking of the facts as found by the master, said, p. 455:

"While the said thirteen wharves involved in this proceeding by no means include all the wharves or stopping places for vessels on the river, it may be said that they embrace the important wharves from which passenger and freight business is chiefly procured in passing up and down the river, and that the business from said wharves is large. With possibly a single exception these wharves are at the termini of public highways in the counties in which they are respectively built; the character of the business consists of passenger travel, and merchandise received over said wharves, consisting of the general products of the country; and they are the usual stopping places of persons living in the immediate neighborhood of the wharves, and of the inhabitants of the country for some distance in the interior. That at said wharves United States post offices are established, at which the mail of the people for the surrounding country is procured; and that, as to the wharves leased as aforesaid, the same were leased upon a rental of a commission of ten per cent of all freight charges and passenger fares collected by the complainant on said wharves, the owner of said wharves maintaining an agent there to assist in mooring the vessels of the complainant making landings there, and in receiving and forwarding freight therefrom, and at some of the wharves sail vessels from time to time moor and

lade and unlade, making proper compensation to the owners of the wharves for their use."

With reference to these facts the Circuit Court said that "While the special master is doubtless correct in his findings as to the actual ownership of the property rights in said wharves, namely, that they are the individual property of the several owners thereof, and as such pass regularly by the laws of descent and purchase, it by no means follows that said wharves are private *quoad* the public; that is, either the citizens desiring to use the wharves to reach the means of transportation upon and over said river, or owners of such methods of transportation plying the waters of said river; the obligation upon each being to render and pay to such wharf owner reasonable wharfage and charges for the use of his property, under such proper and reasonable regulations as might be imposed either by law or by the owner of the property."

The rights of a riparian owner upon a navigable stream in this country are governed by the law of the State in which the stream is situated. These rights are subject to the paramount public right of navigation. The riparian proprietors have the right, among others, to build private wharves out so as to reach the navigable waters of the stream. *Dutton* v. *Strong,* 1 Black, 23; *Yates* v. *Milwaukee,* 10 Wall. 497; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691, 699; *Illinois Central R. R.* v. *Illinois,* 146 U. S. 387, 445; *St. Anthony Falls Water Power Company* v. *St. Paul Water Commissioners,* 168 U. S. 349, 368. The courts of the State of Virginia affirm the same rights of the riparian proprietor. *Norfolk City* v. *Cooke,* 27 Gratt. 430, 435; *Alex. &c. Railway* v. *Faunce,* 31 Gratt. 761, 765. If the wharf obstructs navigation or the private rights of others, or if it encroach upon any public landing, the wharf may be abated. Code of Virginia (1887), § 998. A private wharf on a navigable stream is thus held to be property which cannot be destroyed or its value impaired, and it is property the exclusive use of which the owner can only be deprived in accordance with established law, and if necessary that it or any part of it

be taken for the public use due compensation must be made. The owner of a private wharf on a navigable stream does not, on that account only, hold it by a different title from the owner of any other property which he may use himself or permit others whom he may select to use, while at the same time denying its use by any one else.

The case of *Munn* v. *Illinois*, 94 U. S. 113, 127, has, in our judgment, no bearing upon the question before us. In that case and in those cited therein the discussion was in regard to the right of owners of property of the nature described to charge what they pleased for the doing of the business in which they were engaged. Their property was being used with their consent by and its use devoted to the public to any extent desired, and the only question was in regard to the compensation which they were entitled to ask for the business thus done. The complaint was that the charges were too great and were a violation of a law of the State and were not reasonable, and the answer made by the owners of the property was that it was their private property, and they had the right to charge what they pleased. The court said, as you have devoted your property to a use in which the public has an interest, you have granted to the public an interest in that use and the right, on the part of the State, to regulate charges which you shall make, to the end that they shall be just and reasonable. If the owner of one of these wharves had devoted it to the public use and permitted the public to use it as it desired, and demanded compensation for such use, the question as to the amount of such compensation might be raised as in the Munn class of cases, to be determined with reference to the reasonableness of the charge. But this is no such case. The legislature has passed no law regarding rates, if that were material, and the reasonableness of the charge is not under consideration. The right to use the property has been withdrawn by the owner as to the public in general, including defendant. The only question is whether a third person has the right to use a private wharf on tendering reasonable compensa-

tion therefor, because there is no other wharf at the place, or because it would be more convenient to such third person to so use it or because the former owner of the wharf had permitted the public to use it, although the present owner refused to consent to such use. There is no more reason why such property should be held subject to the right of others to use it against the will of its owner than there is for any other kind of property to be so held.

The question as to the right of the owner to exclude others from the use of a private wharf on a navigable stream has been very recently decided by this court in *Louisville &c. Railway Co.* v. *West Coast Naval Stores Co.*, 198 U. S. 483, and the right of such owner to exclude any or all other persons from the use of such wharves was affirmed. The owner was not, it was also said, compelled to use the wharf exclusively for his own business or else to throw it open for the use of every one; that he could not only use it himself and permit some others to use it, but might at the same time exclude still others to whom he did not choose to grant such right. The case was not decided with reference to the existence of another wharf in the harbor. No such matter was adverted to.

And so in regard to the use of a private wharf by the public, with or without compensation to the owner. The public can obtain no adverse right as against such owner by mere user. To obtain it there must be an intention on the part of the owner to dedicate the property to the use of the public, and there must be an acceptance of such dedication on the part of some public authority, which may sometimes be implied (but not in such a case as this), and in the absence of such dedication and acceptance the use will be regarded as under a simple license, subject to withdrawal at the pleasure of the owner. *Harris* v. *The Commonwealth*, 20 Gratt. 833; *Gaines* v. *Merriman* (1898), 95 Virginia, 660; *Irwin* v. *Dixion*, 9 How. 10, 32. The rights of the public must have been obtained by an adverse user so as to take away from the owner the ordinary rights of ownership. In this case there was never anything but a mere

license. The mere fact that there may be no wharf in the particular place other than that owned by the complainant, and also the fact that the use of such wharf is very convenient or even necessary for the defendant in order to prosecute its business as a competitor of complainant, together with the fact that the former owners had permitted the public upon occasions to use the wharf, furnish not the slightest reason for holding that the wharf of complainant is held on the condition that it must continue to permit others to use it upon compensation, when they desire to prosecute their own business of transporting passengers or freight on the river. It was found by the master that there had never been any abandonment of the right of exclusive enjoyment of any of the wharves, and they were assessed for taxation to the owners and taxes paid on them by the owners.

Mr. Justice Bradley in *Transportation Co.* v. *Parkersburg,* 107 U. S. 691, 699, remarked (*obiter*) that whether a private wharf might be maintained as such where it is the only facility of the kind in a particular port or harbor, might be questioned. He recognized the law to be that there might be a private wharf in a navigable stream, and that the owner in permitting its temporary use by another would be at liberty to make his own bargain for such use. The remark was made with reference to the amount of the charges for wharfage, and the Justice doubted the right, under the circumstances stated, of the owner of a wharf to make such charges as he chose, without reference to their being reasonable. It is another matter, however, to say that the owner of a private wharf must permit its use by the public simply because the wharf he has built or purchased is the only wharf in the port, or because the public had theretofore been permitted to use the wharf, with only the rights of a licensee.

We see no sufficient reason for subjecting a private wharf to the public use, which may frequently include that of a competitor with the owner, simply because there is no other wharf at the place. A public wharf, it is presumed, may be built, or

if there be no place for one, the private wharf might be taken by public authority for the public use, upon compensation being made for the taking of the property.

We are of opinion that the decree of the court below is erroneous, and it is therefore

*Reversed, with directions to enter a decree for an injunction as prayed for in the bill of complaint. So ordered.*