## GREENLEAF JOHNSON LUMBER CO. v. UNITED STATES.

(District Court, E. D. Virginia. February 20, 1913.)

1. NAVIGABLE WATERS (§ 39*)—LANDS UNDER WATER—OWNERSHIP AND CONTROL.

Under the law of Virginia, the ownership of lands in the bed of a navigable stream below low-water mark is vested in the commonwealth, subject to the public easement or servitude in the federal government to control the use of the waters of the stream, in so far as it may determine to be necessary in furtherance of commerce and navigation.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82. 103, 117, 127, 239-244; Dec. Dig. § 39.*]

2. NAVIGABLE WATERS (§ 43*)—RIPARIAN RIGHTS—LAW OF VIRGINIA.

Under the settled law of Virginia, a riparian owner of land on a navigable stream has a fee-simple interest to low-water mark, and also the right to erect wharves or piers or bulkheads in the stream opposite his land, provided navigation be not obstructed nor the private rights of any person otherwise injured thereby; and his right is not a mere license, but constitutes property in the owner.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256-265; Dec. Dig. § 43.*]

3. NAVIGABLE WATERS (§ 7*)—IMPROVEMENT OF NAVIGATION—AUTHORITY OF SECRETARY OF WAR.

An act appropriating money for a specific improvement of a navigable stream is an assertion by Congress of the right of the federal government to make the improvement as an aid to commerce and navigation. and is sufficient authority to the Secretary of War, who is by statute vested with large general powers with respect to rivers and harbors, to proceed with the work.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 18; Dec. Dig. § 7.*]

4. EMINENT DOMAIN (§ 84*)—IMPROVEMENT BY UNITED STATES—DESTRUCTION OF PRIVATE PIERS—RIGHTS OF RIPARIAN OWNER.

Where the effect of the widening of the navigable channel of a river by the United States in aid of commerce and navigation is to change the line of navigability as previously established by state authority, and to partially destroy piers built to such line by a riparian owner under lawful authority, which were themselves constructed as an aid to commerce and under the law of the state constitute property, the result is a taking of such property within the meaning of the fifth constitutional amendment, and the owner is entitled to compensation therefor.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 227-230; Dec. Dig. § 84.*]

In Equity. Suit by the Greenleaf Johnson Lumber Company against the United States. On application by defendant for a mandatory injunction. Denied.

The complainant, Greenleaf Johnson Lumber Company, is the owner in fee of certain property bordering on the Southern branch of the Elizabeth river, opposite the government navy yard at Norfolk, Va. It is engaged in the manufacture and sale of lumber, and in the conduct of its business erected many years ago, in front of its highland, extending out into the river, a wharf and fill; the former being used for the shipment of the product of its mills, and the latter being used for the purpose of floating and holding rough logs prior to their manufacture. All of these improvements were made pursuant to authority obtained from the board of harbor commission-

ers of the port of Norfolk and Portsmouth, and the same, as originally constructed, extended out from the shore into the river to an imaginery line known in this harbor as the "Port Warden's Line," in effect the channel line, or line of navigability. At the time these improvements were made, and for many years subsequent thereto, the government had established no harbor line or line of navigability in this branch of the river, but in 1890, pursuant to an act of Congress, the Secretary of War established such a line, and as established it was coincident in all respects with the previously established state line, and the property in dispute here was entirely within, or inland of, the same, and the line so continued in force and operation until February, 1911, when, after due hearing, the Secretary of War changed its location, so that, as changed and re-established, it ran along the front of complainant's property some 200 and odd feet inland of the original line, the effect of which was to leave outside of such re-established line approximately an equal number of feet of complainant's wharf and fill.

Shortly after this, the Secretary of War gave notice to complainant to remove within 90 days its structures extending out beyond the re-established line, upon penalty of having them removed by the government, his action in this regard being, it is claimed, in accordance with Act Cong. March 4, 1911, c. 239, 36 Stat. 1265–1275, making appropriation for the widening of the channel of the Southern branch of the Elizabeth river opposite the property of the complainant. Complainant thereupon obtained from this court an injunction order restraining the Secretary of War, his agents and servants, from interfering with the possession of the complainant of the property which the government was seeking to destroy. The Secretary of War duly appeared through the district attorney, filed a demurrer to the bill of complaint, and by agreement of parties at the hearing. it was stipulated that the demurrer should be considered as a petition under section 12 of the act of March 3, 1899 (chapter 425, 30 Stat. 1151 [U. S. Comp. St. 1901, p. 3542]), and should be treated by the court as an application on the part of the government pursuant to the terms of said section for a mandatory injunction to compel the removal of the obstruction complained of, in accordance with the notice of the Secretary of War hereinabove referred to.

Briefly speaking, therefore, the question which the court is now called upon to determine is the right and title of a riparian proprietor in a navigable waterway, as against the government, to improvements placed pursuant to lawful authority in the waterway in front of his high land, between low-water mark and the line of navigability, and the effect upon such right or title, if any, of a subsequent change in the line of navigability, the result of which is to leave a part of such improvements outside of the re-established line.

Starke, Venable & Starke and Jeffries, Wolcott, Wolcott & Lankford, all of Norfolk, Va., for complainant.

D. Lawrence Groner, U. S. Atty., of Norfolk, Va.

WADDILL, District Judge (after stating the facts as above). Several incidental questions arise upon the pleadings, which will be considered before passing to the merits, namely, the rights of riparian owners under the laws of Virginia in lands bordering on streams and under the waters thereof to the line of navigability, the ownership of the submerged lands, the rights of the federal government respecting the waters in question, and the status of the riparian owner as respects land below low-water mark.

[1, 2] The following may be conceded as the settled law in Virginia regarding these matters, recognized and acquiesced in by the parties to this proceeding, save the fourth proposition, as to which they are not agreed:

First. That riparian owners have a fee-simple interest to low-water mark in lands bordering on navigable streams.

Secondly. That the ownership of the lands in the bed of a navigable stream below low-water mark is vested in the commonwealth, subject to the public easement or servitude in the federal government in furtherance of the ends of commerce and navigation.

Thirdly. That the use of the waters in question is subject to the paramount power and authority of the federal government thereto, in so far as it may determine to be necessary to further the ends of commerce and navigation.

Fourthly. Riparian owners have the right to erect wharves, or piers, or bulkheads, in water courses opposite their lands, provided navigation be not obstructed, nor the private rights of any person otherwise injured thereby, and that this right in Virginia, within the limitations mentioned, is not a mere license, but constitutes property in the owner.

[3] A preliminary question is presented as to the power and authority of the Secretary of War to make the contemplated improvement, as well as of the lack of specific authority on his part to act, because of the failure of Congress to provide for the work by appropriate legislation. The act of Congress of March 3, 1899 (chapter 425, 30 Stat. L. 1151), confers large powers upon the Secretary of War respecting the rivers and harbors of the country, and the regulation of the navigation of the same, but whether in terms to do the specific work complained of need not be decided, since by the act of March 4, 1911 (chapter 239, 36 Stat. 1265–1275), provision is directly made for the improvement in question, namely, "for the purchase of land and widening of channel," and under this authority the executive branch of the government has the right to designate the hand that it will use to carry out and perform the directions of Congress. The act making the appropriation is a sufficient declaration of the will of Congress that the improvement is desired for the legitimate purposes of commerce and navigation, and hence there can be no legal objection made, either to the making of the contemplated improvement, or the instrumentality chosen to carry out the same, provided the rights of the riparian owner, if any, be properly safeguarded and protected. Here the act sufficiently fixes the location of the improvement, and the pleadings in this case admit that the complainant's lands are within the bounds of the same. South Carolina v. Georgia, 93 U. S. 4, 12, 23 L. Ed. 782; Gibson v. United States, 166 U. S. 269, 276, 17 Sup. Ct. 578, 41 L. Ed. 996; Scranton v. Wheeler, 179 U. S. 141, 157, 21 Sup. Ct. 48, 54 (45 L. Ed. 126). In the latter case, Justice Harlan, speaking for the court, and quoting from Chief Justice Fuller in the Gibson Case, said:

"The legislative authority for these works consisted simply in an appropriation for their construction, but this was an assertion of the right belonging to the government, to which riparian property was subject, and not of a right to appropriate private property, not burdened with such servitude, to public purposes."

This brings us to the crucial question to be determined, namely, the status of a riparian owner, who has built a pier, or wharf, or bulkhead, in front of his land, by and with the assent of the constituted authorities, and within the established harbor lines, upon the

federal government's concluding, in the interest of commerce and navigation, to widen the channel, necessitating the cutting off from his wharf or pier some 200 feet; that is to say, can the same be removed, destroyed, or taken by the government, without just compensation therefor, as required by the fifth amendment of the Constitution? The right of the government, in furtherance of the ends of commerce and navigation, to change harbor lines, to take the pier in question, or cut off and shorten the same, is conceded. In Gilman v. Philadelphia, 3 Wall. 724, 18 L. Ed. 96, the court said:

"Commerce includes navigation. The power to regulate commerce comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States which are accessible from a state other than those in which they lie. For this purpose, they are the public property of the nation, and subject to all the requisite legislation by Congress. This necessarily includes the power to keep them open and free from any obstruction to their navigation interposed by the states or otherwise; to remove such obstructions when they exist; and to provide, by such sanctions as they may deem proper, against the occurrence of the evil and for the punishment of the offenders. For these purposes, Congress possesses all the powers which existed in the states before the adoption of the national Constitution, and which have always existed in the Parliament of England." Gibbons v. Ogden, 9 Wheat. 1, 196, 197, 6 L. Ed. 23; Gilman v. Philadelphia, 3 Wall. 713, 724, 18 L. Ed. 96; South Carolina v. Georgia, 93 U. S. 4, 10, 23 L. Ed. 782; McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248; Scranton v. Wheeler (a decision of Mr. Justice Lurton in the Circuit Court of Appeals for the Sixth Circuit) 57 Fed. 803, 812, 815, 6 C. C. A. 585.

Whether, however, the government can exercise the authority thus claimed by and conceded to it, without making just compensation to those injuriously affected thereby, for damages sustained, under the facts and circumstances of this case, is vigorously contested and controverted by the riparian owner, the complainant here.

The government, on the one hand, claims that the contemplated work is with the view of widening a navigable stream, in the interest of commerce, in the performance of which it is not liable for damages arising to riparian owners, such damage being consequential and incidental to the necessary exercise of the power and authority vested in it, and which is damnum absque injuria certainly so far as the government is concerned, and that it is contrary to the spirit of the Constitution and laws of the United States, that the government should be hindered, or burdened, in making such public improvements by claims of riparian owners, whose property may be injuriously affected by what is being done.

The complainant, on the other hand, contends directly to the contrary, and insists, first, that the state holds the bed of a navigable stream merely as trustee for the use of the complainant and others; second, that its rights in the lands thus held as trustee by the state are not a mere license or privilege, as held in some of the states, but, under the laws of Virginia, constitutes property, and that in the exercise of those rights tangible property, constructed under authority and regulation of the trustee, is private property in the fullest sense, as stable and as fully protected as any other estate, and, like all other property of the individual, can only be taken for public use upon payment of just compensation therefor; third, that once recognized

and held as property, there is no exception made in the Constitution against its protection; fourth, that any physical invasion, whereby the owner is deprived of the possession or use of any portion of it, is a "taking" within the meaning of the Constitution; and, fifth, that in the exercise of its power and control over the waters in question, in the interest of commerce, the government of the United States possesses no higher or other power than the state held, or that the latter acquired from the crown, each sovereign being successively trustee for all the people, and that the structures in question proposed to be removed by the government, namely, wharves, piers, bulkheads, etc., built out into the stream, with the assent of the trustee, are recognized everywhere as being not merely for the benefit of the owner, but as in aid of navigation, and forming an essential part thereof, without which commerce could not be carried on.

In the view taken by the court, a correct determination of the issues thus presented by the pleadings will largely depend upon the character of the estate or interest held by the riparian owner under the laws of Virginia in the property involved in the pleadings, built out into navigable waters, pursuant to lawful authority, and the extent to which the government, in the interest of commerce and navigation, purposes to disturb the same; that is, whether what is proposed to be done amounts to a taking of property, or merely incidentally affects it injuriously. The statute of Virginia (section 944a [31]) is as follows:

"(31) Any person owning land upon a water course may erect a wharf on the same. or pier or bulkhead, in such water course opposite his land: Provided. navigation be not obstructed, nor the private rights of any person be otherwise injured thereby. * * *"

This act, and what may be termed the status of riparian owners, respecting waters on which their high lands border, has been the subject of frequent decisions by the Supreme Court of Appeals of Virginia, and the law may be said to be settled that such owners are not merely licensees in respect to their rights in the lands and waters in question, but that their interests constitute a property right of which they cannot be lawfully deprived without the payment of just compensation, if taken.

In Norfolk City v. Cooke, 68 Va. 430, 435, the leading case in Virginia on the subject, the Supreme Court of Appeals, especially citing the opinion of Mr. Justice Miller in Yates v. Milwaukee, 10 Wall. 497, 19 L. Ed. 984, and relying on that decision and the cases there referred to, says, after quoting the Virginia statute above mentioned:

"This right of the riparian owner is not a mere license or privilege, but is property, property in the soil, up to the line of navigability, though covered by water; for a wharf, pier or bulkhead, can only be built on the soil. It is not a mere easement to pass over, or a privilege to use the surface, but property in the soil under the water, on which to fasten and build such structure: and for this purpose, and subject to the restriction that navigable waters shall not be obstructed, is as much property as the land above the margin of a navigable stream."

To the same effect are the decisions of Virginia to the present time, the most recent case having been decided within the last two years

(110 Va. 874, 67 S. E. 534). Groner v. Foster, 94 Va. 650, 27 S. E. 493; Taylor v. Commonwealth, 102 Va. 759, 771, 47 S. E. 875, 102 Am. St. Rep. 865; Grinels v. Daniel, 110 Va. 874, 67 S. E. 534. In all of the Virginia decisions, the case of Yates v. Milwaukee, 10 Wall. 497, 19 L. Ed. 984, is referred to and relied on, and in the last two the court quotes therefrom approvingly the portion hereinafter set out.

The suggestion is made by counsel for the government that a remark made by the court in the case of Taylor v. Commonwealth, supra, that the doctrine enunciated in the Cooke Case, supra, was a broad statement of the law, which it was not called on to either criticise or approve, had the effect of modifying that decision; but such manifestly is not the case, as is clear from the court's language, and, besides, of the Virginia cases named, the Taylor Case was the only one that did not involve the question especially presented here, it pertaining more particularly to the right of a riparian owner as against the state to certain hidden property rights under water, namely, the right to bore an artesian well out in the stream in a portion of the soil as to which complainant had theretofore made no assertion of riparian rights. Moreover, in the much more recent decision of Grinels v. Daniel, 110 Va. 874, 67 S. E. 534, supra, more particularly in point here, the Cooke Case was especially relied on, and no suggestion intimated as to any qualification thereof.

In the judgment of the court, the cases, in effect, agree that where the interest involved is property, and the same is lawfully in the stream, and what is proposed is to take it, as distinguished from merely injuriously affecting it, it can only be done upon making just compensation therefor. The contrariety of views that apparently prevail grows out of the existence or nonexistence of some one of the conditions indicated, and arise generally in cases injuriously affecting the high lands, or resulting in incidental injury or damage to the same, or to the riparian owner's rights appertaining thereto.

The case of Yates v. Milwaukee, 10 Wall. 497, 504, 505, 19 L. Ed. 984, supra, is more like the present in its essential features than any federal case to which the court has been referred. There the owner of land fronting on the river in the city of Milwaukee, in the state of Wisconsin, had, pursuant to lawful authority, built over land covered by water of no use for the purposes of navigation a wharf extending to the navigable channel of the river. The city council, under a state statute, enacted before the wharf was built, was authorized thereby to establish dock and wharf lines on the banks of the river, and to restrain and prevent encroachments upon and obstructions in the river, and to cause the river to be dredged, in pursuance of which the city, without evidence that the wharf was an obstruction to navigation, or in any sense a nuisance, passed an ordinance declaring the same to be such, and ordered it to be abated. Whereupon Yates instituted proceedings to prevent the enforcement of the ordinance, or the removal of the wharf. The court held that a mere declaration of the city council that the wharf already built and owned by the plaintiff was a nuisance, did not make it such, or subject to removal by the city authorities; the court saying:

"But, whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream; and among those rights are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf, or pier for his own use, or for the use of the public, subject to such general rules and regulations as the Legislature may see proper to impose for the protection of the rights of the public, whatever those may be. This proposition has been decided by this court in the cases of Dutton v. Strong, 1 Black, 25 [17 L. Ed. 29], and Railroad Co. v. Schurmeier, 7 Wall. 272 [19 L. Ed. 74]. * * * This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and, if necessary, that it be taken for the public good, upon due compensation."

In Shively v. Bowlby, 152 U. S. 1, 40, 14 Sup. Ct. 548, 38 L. Ed. 331, the Supreme Court of the United States indicated that much that was decided in the Yates Case was obiter, still it was the unanimous opinion of the court, rendered in a case strikingly like the one under consideration here, while the Shively Case was one of incidental or consequential damages, and not a taking of property.

The Yates Case was the subject of further review by the Supreme Court in the case of Scranton v. Wheeler, 179 U. S. 141, 158, 21 Sup. Ct. 48, 45 L. Ed. 126, which is strongly relied upon by the government, a much later case than that of Shively v. Bowlby, supra, and in which it is quite apparent to the court that upon a state of facts such as we have here it would have received the sanction and full approval of the court. Mr. Justice Harlan, speaking for the court, at page 158 of 179 U. S., at page 55 of 21 Sup. Ct. (45 L. Ed. 126), said:

"The decision in Yates v. Milwaukee cannot be regarded as an adjudication upon the particular point involved in the present case. That, as we have seen, was a case in which the riparian owner had in conformity with law erected a wharf in front of his upland in order to have access to navigable water. The city of Milwaukee attempted arbitrarily and capriciously to destroy or remove the wharf that had lawfully come into existence and was not shown, in any appropriate mode, to have been an obstruction to navigation. It was a case in which a municipal corporation intended the actual destruction of tangible property belonging to a riparian owner and lawfully used by him in reaching navigable water, and not, like this, a case of the exercise in a proper manner of an admitted governmental power resulting indirectly or incidentally in the loss of the citizen's right of access to navigation—a right never exercised by him in the construction of a wharf before the improvement in question was made by the government."

Assuming that what the government proposed doing constitutes a taking of the complainant's property, the court can but believe that the foregoing decisions, and those of like import, control, and that the property can only be secured upon payment of just compensation therefor.

The Monongahela Navigation Co. Case strongly sustains the view that if tangible property of the complainant placed in the navigable waters of a stream on which its property borders, pursuant to lawful authority, is to be taken for public purposes, it can only be done upon making just compensation. That case involved the taking of a dam and lock in the Monongahela river, placed there in the interest of commerce and navigation, and the Supreme Court held that inas-

much as the government's improvement involved the destruction of the lock and dam lawfully placed therein, with the consequent loss of business, including its franchises, it could only be done by paying proper compensation therefor. Monongahela Navigation Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463.

Two cases have been cited by counsel for the complainant—Weems Steamboat Co. v. People's Steamboat Co., 214 U. S. 354, 29 Sup. Ct. 661, 53 L. Ed. 1024, 16 Ann. Cas. 1222, and Scranton v. Wheeler, 57 Fed. 803, 6 C. C. A. 585, supra. These two decisions are of more than passing interest, in that the first named is a very recent decision of the Supreme Court of the United States, on the right of riparian owners in wharf property in Virginia, and the other an opinion of Mr. Justice Lurton, speaking for the Circuit Court of Appeals for the Sixth Circuit, considering the difference between cases in which the obstruction had been lawfully placed in the stream and those in which it had not. "The rights of a riparian owner upon a navigable stream in this country are governed by the law of the state in which the stream is situated. These rights are subject to the paramount public right of navigation. The riparian proprietors have the right, among other things, to build wharves out so as to reach the navigable waters of the stream. * * *" Weems Steamboat Co. v. People's Steamboat Co., 214 U. S. 354, 355, 29 Sup. Ct. 663, 53 L. Ed. 1024, 16 Ann. Cas. 1222. "A distinction exists between those cases where, under authority of the state, a structure has been placed in a navigable stream, such as a bridge, or lock and dam, as an improvement to the navigation of a stream wholly within its borders, and which is sought to be removed under the authority of subsequent congressional legislation. In such case, the improvement, being by authority of law, can only be taken for public uses upon just compensation. This is the doctrine of the case of Monongahela Navigation Co. v. United States, 148 U. S. 312 [13 Sup. Ct. 622, 37 L. Ed. 463]. In that case it was held that, not only the actual property of the owner in the structure, but his franchise also, must be paid for. The plaintiff in the case before us has made no improvements for either public or private uses. No property of his has been invaded, none has been taken," Scranton v. Wheeler, 57 Fed. 803, 814, 6 C. C. A. 585 (meaning that no pier had been built where the government had erected its pier).

The case of United States v. Lynah, 188 U. S. 445, 458, 474, 479, 23 Sup. Ct. 349, 47 L. Ed. 539, while in some of its features similar, is not entirely like the one in hand. In many respects it is especially applicable, and strongly supports the complainant's view as to when and when not, and in what manner the government can take a citizen's property. The government cites many authorities in support of its views, among them Gibbons v. Ogden, 9 Wheat. 1, 196, 6 L. Ed. 23; Martin v. Waddell, 16 Pet. 410, 413, 10 L. Ed. 997; McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248; Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1, 8 Sup. Ct. 811, 31 L. Ed. 629; Illinois Central v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018; Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331; Gibson v. United States, 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996; Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126; Chicago

v. Illinois, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Hannibal Bridge Co. v. United States, 221 U. S. 194, 31 Sup. Ct. 603, 55 L. Ed. 699; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; Stockton, Attorney General, v. Baltimore (C. C.) 32 Fed. 9; Taylor v. Commonwealth, 102 Va. 759, 47 S. E. 875, 102 Am. St. Rep. 865; Cohn v. Boom Co., 47 Wis. 325, 2 N. W. 546; Black River Improvement Co. v. La Crosse Transp. Co., 54 Wis. 659, 11 N. W. 443, 41 Am. Rep. 66; Keator Lumber Co. v. St. Croix Corporation, 72 Wis. 82, 38 N. W. 529, 7 Am. St. Rep. 837; Sage v. New York, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592, and also an opinion of former Attorney General Griggs, 22 Op. Atty. Gen. 501. Undoubtedly the government has heretofore taken the same view now contended for, and it may be said that the Attorney General's opinion referred to contains a very able and exhaustive exposition of that position; but whether the same has been accepted or can be maintained is a very different proposition. In the view of the court, it will not be necessary to review the cases furnished by the government, further than to say that many of them are bridge cases, which involve different questions from the one under consideration. Others depend on an entirely different state of facts from this, and others still upon independent considerations from those properly applicable and controlling in this case. Special reference will only be made to three of the cases most strongly relied on by the government, namely, Gibson v. United States, 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996, supra, Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126, supra, and Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570. The first two of these cases have to do directly with the rights and powers of the government in making river and harbor improvements in aid of commerce to take property in which riparian owners are interested; but a careful examination of both of the cases will show that they neither control, nor as a matter of fact materially affect, the crucial point involved in this case.

In the Gibson Case the government in improving the Ohio river, at a point off Neville Island, some nine miles west of the city of Pittsburgh, constructed a dike of considerable length in front of the plaintiff's, the riparian owner's, property, in order to concentrate the water flow in the main channel of the river, which resulted in injury to plaintiff's land, a market garden, and landing for the shipment of her products. Chief Justice Fuller, speaking for the court, said (166 U. S. at page 276, 17 Sup. Ct. at page 580, 41 L. Ed. 996):

"In short, the damage resulting from the prosecution of this improvement of a navigable stream, for the public good, was not the result of a taking of appellant's property, and was merely incidental to the exercise of a servitude to which the property had always been subjected."

In the Scranton Case the government erected a pier in St. Mary's river, Mich., out into the river, across the front of the plaintiff's lands. The right of recovery arising from the damage to the riparian owner's property was denied; Mr. Justice Harlan, speaking for the

204 F.—32

court, saying at page 158 of 179 U. S., at page 55 of 21 Sup. Ct., 45 L. Ed. 126, that it was "a case of the exercise in a proper manner of an admitted governmental power, resulting indirectly or incidentally in the loss of a citizen's right of access to navigation—a right never exercised by him in the construction of the wharf before the improvement in question was made by the government."

The case of Philadelphia Co. v. Stimson will be found to contain a full and very recent discussion of the general subject, but nothing especially inimicable to the views herein enunciated; as a matter of fact pages 624 to 636 of 223 U. S., pages 346 to 351 of 32 Sup. Ct. (56 L. Ed. 570), in many respects strongly support the same. The case more particularly involved the rights of riparian owners resulting from a change in their shore lines caused by the flow of water, whether sudden or gradual, and the right of the government to change the harbor lines in consequence thereof, among other causes, but it only incidentally applies here, as viewed by the court.

In this circuit the cases bearing particularly on the subject are entirely in consonance with the view here expressed. In the Hawkins Point Light-House Case (C. C.) 39 Fed. 77, 87, a controversy between the government and the riparian owner over the right to construct a lighthouse, Judge Morris, of the District Court of Maryland, in deciding in favor of the government, noted that in advance of the building of the lighthouse nothing had been done by the riparian owner to assert his rights as such to the land taken by the government. In the case of Richardson v. United States (C. C.) 100 Fed. 714, a decision of Judge Simonton in the United States Circuit Court for the Eastern District of Virginia, it was decided that the improvement made by the government out of which the litigation grew resulted in incidental damage and injury to the petitioner's property, and hence that no recovery could be had. It is not believed that in any of the cases involving damages arising from the taking of property of the riparian owner compensation has been refused except where they were either of merely incidental character, or where there had been no assertion of such right, or that the exercise of the same had been attempted without previous and proper authority, to extend piers or wharves out into and occupy navigable waters.

Is it proposed to take complainant's property here? On the correct answer to this inquiry largely depends the question at issue. If what they have is property, and the same is to be taken, then, confessedly, it can only be done, upon making due payment therefor to the owner (Const. art. 5); "nor shall private property be taken for public use, without just compensation." The counsel for the government, in the very able and learned argument made on its behalf, was driven to the alternative of maintaining that what was proposed was the destruction of and not the taking of the pier in question. This will not, in the court's judgment, answer, certainly in a case involving the right and title of a riparian owner to tangible property built out into the navigable waters, on which his lands border, by lawful authority. To all intents and purposes the destruction and taking are the same; one is tantamount to the other. In either event the complainants lose what they have, and the government gets what it desires. Whatever may

be the power of the government to destroy the property of a stranger, or a trespasser, or even a licensee, in furtherance of the ends of commerce, no such right and authority exists in dealing with the rights of those lawfully using and occupying the waters, such as a riparian owner. The language of Mr. Justice Brewer in United States v. Lynah, 188 U. S. 464, 23 Sup. Ct. 355, 47 L. Ed. 539, after referring to Great Falls Mfg. Co. v. Attorney General, 124 U. S. 581, 8 Sup. Ct. 631, 31 L. Ed. 527, and several other cases, in which the government had arbitrarily taken private property before condemning or otherwise lawfully acquiring the same, seems appropriate here: "The rule deducible from these cases is that, when the government appropriates property which it does not claim as its own, it does so under an implied contract that it will pay the value of the property it so appropriates. It is earnestly contended in argument that the government had a right to appropriate this property. This may be conceded, but there is a vast difference between a proprietary and a governmental right. When the government owns property, or claims to own it, it deals with it as owner and by virtue of its ownership, and, if an officer of the government takes possession of property under the claim that it belongs to the government (when in fact it does not), that may well be considered a tortious act on his part, for there can be no implication of an intent on the part of the government to pay for that which it claims to own. Very different from this proprietary right of the government in respect to property which it owns is its governmental right to appropriate the property of individuals. All private property is held subject to the necessities of government. The right of eminent domain underlies all such rights of property. The government may take personal or real property whenever its necessities or the exigencies of the occasion demand. So the contention that the government had a paramount right to appropriate this property may be conceded, but the Constitution in the fifth amendment guarantees that, when this governmental right of appropriation—this asserted paramount right—is exercised, it shall be attended by compensation." So far as the owner is concerned, the effect is precisely the same, whether property be appropriated for the government's uses or by force and violence destroyed, in order that it may encompass its ends and accomplish its purposes. As to just what constitutes a taking, the same learned justice quotes from the opinion of Mr. Justice Miller in Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557, as follows:

"The argument of the defendant is that there is no taking of the land within the meaning of the constitutional provision, and that the damage is a consequential result of such use of a navigable stream as the government had a right to for the improvement of its navigation. It would be a very curious and unsatisfactory result if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that, if the government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not taken for the public use. Such a construction would pervert

the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors."

What the pleadings admit is to be done in the case, as viewed by the court, clearly constitutes the taking of complainant's property, for which they are entitled to be remunerated. Reference may be had to the following authorities as supporting generally the views herein expressed: Shively v. Bowlby, 152 U. S. 40, 14 Sup. Ct. 548, 38 L. Ed. 331; Stockton v. Baltimore, etc., R. Co. (C. C.) 32 Fed. 19; Sullivan Timber Co. v. City of Mobile (C. C.) 110 Fed. 190, 194; Commonwealth v. Alger, 7 Cush. (Mass.) 83; Horner v. Pleasants, 66 Md. 475, 7 Atl. 692; Lewis v. City of Portland, 25 Or. 133, 35 Pac. 256, 22 L. R. A. 736, 42 Am. St. Rep. 772; 1 Farnham on Waters and Water Rights, 50, 136, 510, 511, 551, 552, 569; 1 Lewis on Eminent Domain, §§ 76 (b), 78, 83.

In reaching the conclusion here, sight has not been lost of the fact of the importance of the case to the government, not only because of the amount involved in this and similar cases, but because of possible delays and inconveniences that may result therefrom in making contemplated improvements. But nevertheless the court can but believe that when, in the interest of commerce and furtherance of its ends, property of the character involved in this case itself being an instrument of commerce, lawfully placed by a riparian owner in navigable waters has to be taken, that loss arising thereby should not fall upon an innocent riparian owner exclusively, but upon the government, and thus be borne by the public generally.

It follows from what has been said that the mandatory injunction asked for by the government to remove the pier and its appurtenances should be denied, and it will be so ordered.